FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2b AUG 10 PM 3: 29

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **STEFFANY ROSE HAMNER©™** individually and as beneficial owner of property held in STEFFANY ROSE HAMNER ESTATE©™, by and through her Attorney-in-Fact, Authorized Representative, and Beneficial Heir, steffany-rose oakland©™, living woman, and auron-caelum: stark, as Co-counsel of record | ) ) ) ) ) ) ) ) | **DOCKET NO.** |
| **AND** | ) ) | |
| **THOMAS PATRICK HAMNER** by and through his Attorney-in-Fact, and Authorized Representative, steffany-rose: oakland©™, living woman, and auron-caelum: stark, as Co-counsel of record | ) ) ) ) ) | **COMPLAINT FOR VIOLATIONS OF FEDERAL RICO ACT, SECURITIES FRAUD, CONSPIRACY TO COMMIT OFFENSE AGAINST THE UNITED STATES, CONSPIRACY AGAINST** |
| Plaintiffs. | ) ) ) | **RIGHTS AND REQUEST FOR DECLARATORY JUDGEMENT INJUNCTIVE AND OTHER** |
| V. | ) ) ) | **EQUITABLE RELIEF** |

**THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF EL PASO, COLORADO, a governmental body, and its Commissioners in their official and personal capacities:**

**Commissioner HOLLY WILLIAMS, an individual, in her official and personal capacities as Commissioner**

**Commissioner CARRIE GEITNER, an individual, in her official and personal capacities as Commissioner**

**Commissioner BILL WYSONG; an individual, in his official and personal capacities as Commissioner**

**Commissioner CORY APPLEGATE; an individual, in his official and personal capacities as Commissioner**

**and Commissioner LAUREN NELSON; an individual, in her official and personal capacities as Commissioner**

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

KELLY JUNE MCPHERSON, an individual, in her official and personal capacities as a District Court Judge for the Fourth Judicial District of COLORADO;

SCOTT SOSEBEE, an individual, in his official and personal capacities as Court Executive for the Fourth Judicial District;

BRIDGET COLLINS, an individual, in her official and personal capacities as Deputy Court Executive for the Fourth Judicial District;

SHERI KING, an individual, in her official and personal capacities as Clerk of Court for the Fourth Judicial District;

CHARLES BROERMAN, a.k.a. CHUCK BROERMAN, an individual, in his official and personal capacities as El Paso County Treasurer;

STEVE SCHLEIKER, an individual, in his official and personal capacities as El Paso County Clerk and Recorder;

KENNY HODGES, an individual, in his official and personal capacities as El Paso County Attorney;

MEAGAN MORGAN, an individual, in her official and personal capacities as El Paso County Deputy Public Trustee;

JANWAY LAW FIRM, P.C.,a Colorado professional corporation, and its attorneys in their official and personal capacities:

LYNN M. JANEWAY, in her official and personal capacity as Attorney and as Majority Shareholder/President of Janeway Lawfirm P.C.

DAVID R. DOUGHTY, in his official and personal capacity as Managing Attorney of Janeway Lawfirm P.C.

and ALISON L. BERRY; in her official and personal capacity as Associate Attorney of Janeway Lawfirm P.C.

MORTGAGE SOLUTIONS OF COLORADO, LLC. d/b/a MORTGAGE SOLUTIONS FINANCIAL, a Colorado corporation, and its employees in their official and personal capacities;

MSF SERVICING, a Wyoming entity, and its employees in their official and personal capacities;

MERSCORP HOLDINGS, LLC, a Delaware corporation, d/b/a MORTGAGE ELECTRONIC REGISTRATION SYSTEM (MERS);

JEFFREY TRUSHEIM, an individual, in his official and personal capacities as CFO of Mortgage Solutions of Colorado;

**FEDERAL HOME LOAN MORTGAGE CORPORATION, a.k.a. FREDDIE MAC, a federally charted corporation and its employees in their official and personal capacities;**

**U.S. BANK NATIONAL ASSOCIATION, a federally chartered national trust company serving as Indenture Trustee and custodian of fraudulent securities, and its employees in their official and personal capacities;**

**DEBRA BAKER, an individual, in her official and personal capacities as a Notary Public registered with the Colorado Secretary of State under notary ID 20154002003, and as an Escrow Agent in the real estate industry;**

**STEWART TITLE COMPANY, a Foreign Corporation incorporated in Texas with COLORADO SOS ID No. 20091294756, operating under the trade name UNIFIED, A DIVISION OF STEWART, with principal office at 1360 Post Oak Blvd., Suite 100, Houston, Texas [77056], and registered agent at 7700 E Arapahoe Rd Suite 220, Centennial, Colorado [80112], and its employees and agents in their official and personal capacities;**

**JOHN AND JANE DOES 1-25,**

    Defendants.

---

## COMPLAINT FOR VIOLATIONS OF FEDERAL RICO ACT, SECURITIES FRAUD, CONSPIRACY TO COMMIT OFFENSES AGAINST THE UNITED STATES, CIVIL RIGHTS CONSPIRACY, AND REQUEST FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

---

### TRIAL BY JURY DEMANDED

---

## INTRODUCTION

COMES NOW, STEFFANY ROSE HAMNER©™ and THOMAS PATRICK HAMNER, by and through counsel, and bring this action against Defendants strictly under duress, for an ongoing conspiracy to commit racketeering, securities fraud, identity theft, conspiracy to commit offenses against the United States, and conspiracy against the rights of Plaintiffs. This criminal enterprise was perpetrated through fraudulent securitization, identity theft, breach of fiduciary duty, records tampering, computer fraud, and unlawful foreclosure of real property located at 10442 Beckham Street, Peyton, Colorado [80831]. The property is estate property held under the protection of

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

MAKARIOS LIVING TEMPLE TRUST™, a foreign ecclesiastical sovereign trust entity. This conspiracy has caused Plaintiffs immeasurable injury and deprivation of their most fundamental constitutional rights, property interests, and fiduciary protections. Plaintiffs seek equitable relief, injunctive relief, and restitution in the amount of One Billion, Five Hundred Sixty-One Million Dollars ($1,561,000,000.00) in monetary damages, and all additional relief as set forth herein, and a permanent injunction against all Defendants.

The evidence supporting this Complaint is voluminous and already on record in the related federal case pending in the United States District Court for the District of Massachusetts, which involves similar patterns of securitization fraud and forged documentation, perpetrated by many of these same Defendants or their corporate affiliates.

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., the Securities Act of 1933, 15 U.S.C. § 77q et seq., the Securities Exchange Act of 1934, 15 U.S.C. § 78j et seq., the Civil Rights Act of 1871, 42 U.S.C. § 1983, Federal Maritime Law (46 U.S.C. § 30908, § 30912), and the Foreign Sovereign Immunities Act (28 U.S.C. § 1602 et seq.).

2. **Standing and Real Party in Interest:** Plaintiffs STEFFANY ROSE HAMNER©™ and THOMAS PATRICK HAMNER are the beneficial owners and economic stakeholders of the subject real property held in trust and estate vehicles, and are the real parties in interest in this action. Under Federal Rule of Civil Procedure 17(a), the real party in interest is the person who will be bound by the judgment and who has suffered the direct economic injury—not the legal title-holding vehicle. Plaintiffs have standing to pursue claims for deprivation of their property rights, regardless of the legal holding structure in which the property is titled. The trust/estate designation describes the PROPERTY STATUS, not the

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

identity of the injured parties. The Plaintiffs are the real parties in interest because: (a) they will be bound by any judgment in this action; (b) they have suffered direct and concrete economic injury (loss of property, deprivation of equity, fraudulent securitization of their assets); and (c) they are the beneficial owners and ultimate stakeholders in the trust property. The trust is merely a title-holding and fiduciary vehicle, not an injured party with independent legal interests. Plaintiffs appear by and through their duly appointed Attorney-in-Fact, steffany-rose: oakland©™, and co-counsel auron-caelum: stark, pursuant to General Durable Power of Attorney already on public record and Notice of Delegated Appointment and Designation of Lead Counsel of Record filed into this case. See *Toolson v. Motion Picture Assn.*, 346 U.S. 461 (1954), and related federal case law establishing that parties with sufficient economic interest and standing can bring suit without being the legal record title holder.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiffs are members of MAKARIOS LIVING TEMPLE TRUST™, a foreign ecclesiastical sovereign entity operating under divine and natural law and not subject to state corporate or trust law, and Defendants are citizens of the State of Colorado and various federal entities operating under statutory corporate authority. The trust is a foreign ecclesiastical entity with sovereign status under international law and the Foreign Sovereign Immunities Act (28 U.S.C. § 1602 et seq.). State rules requiring trusts to be named as parties do not apply to foreign sovereign trusts operating under ecclesiastical and divine law principles. The beneficial owners of this foreign sovereign trust have standing to sue for violation of their property rights under federal question jurisdiction and diversity jurisdiction, and such standing is not diminished by the trust's foreign ecclesiastical status. This Court's exercise of federal jurisdiction over claims arising from federal question jurisdiction (RICO, securities fraud, civil rights) and diversity jurisdiction (foreign sovereign entity vs. state defendants) is proper and appropriate.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as the subject

property at issue is located in El Paso County, Colorado, within this judicial district, and the substantial majority of the Defendants reside in, conduct official business in, and perpetrated the alleged fraudulent conduct in El Paso County, Colorado, within this judicial district.

## PARTIES

4. Plaintiffs STEFFANY ROSE HAMNER©™ and THOMAS PATRICK HAMNER are living individuals, beneficial owners of the real property located at 10442 Beckham Street, Peyton, Colorado [80831], and holders of superior secured creditor status through perfected UCC-3 Assignments and federal priority liens. The property is estate property held under STEFFANY ROSE HAMNER ESTATE©™ and protected by MAKARIOS LIVING TEMPLE TRUST™. *(SEE EXHIBIT 1 - UCC-3 Assignment File # 20252119773 and related secured creditor documentation; EXHIBIT 12 (FILED UNDER SEAL) - Federal Priority Lien Filings and complete documentation Massachussetts federal case for prior record establishment)*

5. Defendant EL PASO COUNTY, COLORADO is a municipal corporation operating under the laws of the State of Colorado and acting through its various boards, officers, and agents, including the Board of County Commissioners.

6. Defendant THE BOARD OF COUNTY COMMISSIONERS OF EL PASO COUNTY is a governmental body whose members are sued in their official and personal capacities for ignoring Plaintiffs' Notice of Bond Claim, Demand for Investigation, and Notice of Intent to Sue.

7. Defendant KELLY JUNE MCPHERSON is an individual serving as a District Court Judge for the Fourth Judicial District Court in EL PASO COUNTY, COLORADO, sued in her official and personal capacities. McPherson authorized the unlawful foreclosure sale of Plaintiffs' property despite receiving notice of Plaintiffs' fraud claims, evidence of securitization fraud, and a Notice of Intent to File Bond Claim, Demand for Investigation, and Demand for Settlement, while

simultaneously serving as a named defendant in related federal litigation involving the same parties and similar conduct.

8. Defendant SCOTT SOSEBEE is the Court Executive for the Fourth Judicial District, sued in his official and personal capacities, and is responsible for the financial administration and accounting of the judicial district's fraudulent securitization scheme.

9. Defendant BRIDGET COLLINS is the Deputy Court Executive for the Fourth Judicial District, sued in her official and personal capacities, and participated in the administration and concealment of the fraudulent scheme.

10. Defendant SHERI KING is the Clerk of Court for El Paso County, sued in her official and personal capacities, and certified fraudulent documents including the exemplified copy of the Verified Motion for Order Authorizing A Foreclosure Sale, knowing that said documents contained inconsistencies and falsified party name references, and participated in the administration and concealment of the fraudulent scheme.

11. Defendant CHARLES (CHUCK) BROERMAN is the El Paso County Treasurer and Public Trustee, sued in his official and personal capacities, and participated in the receipt and distribution of fraudulent securitization proceeds, the signing and recording of fraudulent instruments including the PUBLIC TRUSTEE'S CERTIFICATE OF PURCHASE recorded on July 24, 2026, at reception number 226070428, and the administration and concealment of the fraudulent scheme. The Certificate of Purchase was executed and recorded based upon a fraudulently notarized Deed of Trust bearing a forged notary stamp with invalid notary ID, and therefore the Certificate of Purchase itself is void ab initio and legally unenforceable. *(SEE EXHIBIT 2 - Certified Copy of the Certificate of Purchase, Reception No. 226070428, dated July 24, 2026)*

12. Defendant STEVE SCHLEIKER is the El Paso County Clerk and Recorder, sued in his official and personal capacities. Schleiker has unlawfully denied recording services and refused to record critical Notices of Lis Pendens and priority lien

documents that would perfect Plaintiffs' superior secured creditor status, despite having previously recorded this priority lien for Plaintiffs. Schleiker imposed an unlawful "email pre-approval" requirement not mandated by Colorado law (C.R.S. § 30-10-406), indefinitely delayed recording for 60+ days without formal statutory denial, and acted with clear conflict of interest as a named defendant in this same federal litigation. Schleiker's unlawful denials violate federal maritime law supremacy (46 U.S.C. § 30908, § 30912), ministerial duty requirements, and federal diversity jurisdiction perfection requirements. *(SEE EXHIBIT 13 - Email Chain: Steve Schleiker and Kenny Hodges Correspondence Regarding Recording Request Denial and Governmental Non-Response, June 9, 2026 Forward)*

13. Defendant KENNY HODGES is the El Paso County Attorney, sued in his official and personal capacities, and deliberately ignored Plaintiffs' lawful requests for intervention, demands for investigation, and demands for settlement, thereby denying Plaintiffs their right to petition the government for redress and suppressing evidence of federal crimes.

14. Defendant MEAGAN MORGAN is the Deputy Public Trustee, sued in her official and personal capacities, and signed off on fraudulent instruments including the alleged PUBLIC TRUSTEE'S CERTIFICATE OF PURCHASE recorded on July 24th, 2026, at reception number 226070428, after having received Plaintiffs' NOTICE OF CLAIM and with full knowledge that the underlying foreclosure sale was void and fraudulent. *(SEE EXHIBIT 2 - Certified Copy of the Certificate of Purchase, Reception No. 226070428, dated July 24, 2026; EXHIBIT 16 - Notice of Bond Claim, dated July 19, 2026)*

15. Defendant JANWAY LAW FIRM, P.C. is a Colorado professional corporation engaged in the practice of law and participated in the fraudulent foreclosure scheme by drafting and filing the Verified Motion for Order Authorizing A Foreclosure Sale, by acquiring Plaintiffs' first mortgage debt as a debt collector (an unprecedented action indicating MSF's admission of no standing to foreclose), by engaging in identity theft through use of falsified party names, by

committing tax fraud and tax evasion through fraudulent securitization schemes, and by perpetrating RICO violations through systematic fraud. *(SEE EXHIBIT 3 - Notice of Debt Acquisition from Janeway Law Firm; EXHIBIT 9 - Service Defect Documentation Package showing falsified party names "STEFFANY HAMMER")*

16. Defendants LYNN M. JANEWAY, DAVID R. DOUGHTY, and ALISON L. BERRY are attorneys employed by or associated with Janeway Law Firm, P.C., sued in their official and personal capacities, and directly participated in drafting and filing fraudulent pleadings, acquiring fraudulent first mortgage debt, and perpetrating identity theft through falsified party name references.

17. Defendant MORTGAGE SOLUTIONS OF COLORADO, LLC (d/b/a MORTGAGE SOLUTIONS FINANCIAL) is the purported lender and foreclosing entity that initiated and perpetuated the fraudulent securitization scheme, violated RESPA obligations to respond to Plaintiffs' requests within 30 days, and sold Plaintiffs' first mortgage to debt collector Janeway Law Firm, an unprecedented action indicating MSF's complete capitulation and admission of no standing, no enforceable security interest, and no ability to foreclose. *(SEE EXHIBIT 5 - QWR Response from MSF Servicing showing loan number 0820897205 and RESPA violation)*

18. Defendant MSF SERVICING, a Wyoming entity registered as a MORTGAGE BANKER, is listed on all Qualified Written Request responses and mortgage statements as the primary servicer and is responsible for the fraudulent servicing, accounting misconduct, and failure to properly credit Plaintiffs' payments and respond to requests for accounting and verification of debt. MSF Servicing's actions—or failures to act—constitute RESPA violations, TILA violations, FDCPA violations (including the implicit admission that MSF or its principal is a debt collector through the sale of the first mortgage to Janeway Law Firm), embezzlement of estate funds through fraudulent accounting, and conspiracy to commit fraud. MSF Servicing's Wyoming registration as a MORTGAGE BANKER establishes that the entity is subject to federal banking

regulations and carries fiduciary responsibilities to Plaintiffs as borrowers/account holders. *(SEE EXHIBIT 6 - MSF Servicing Wyoming SOS Registration showing MORTGAGE BANKER designation; EXHIBIT 5 - QWR Response from MSF Servicing showing loan number discrepancies and accounting deficiencies)*

19. Defendant MERSCORP HOLDINGS, LLC is a Delaware corporation that operates the Mortgage Electronic Registration Systems (MERS), which maintained accurate borrower name records while simultaneously allowing fraudulent instruments and assignments with falsified names to be recorded, thereby facilitating the entire securitization fraud and creating a permanent record of Defendants' knowledge and intentional malice.

20. Defendant JEFFREY TRUSHEIM is the CFO of Mortgage Solutions of Colorado, LLC, sued in his official and personal capacities, and is responsible for the financial management and securitization of fraudulent loan instruments. Trusheim breached his fiduciary duty by ignoring Plaintiffs' fiduciary letter of appointment, IRS Form 56, and UCC-3 Assignment of Debt (Colorado SOS File # 20252119773), which formally assigned the entire mortgage debt to Trusheim himself, creating direct personal liability and fiduciary obligations toward Plaintiffs. Trusheim's refusal to acknowledge or honor the debt assignment constitutes conversion, breach of fiduciary duty, and intentional fraud. *(SEE EXHIBIT 1 - UCC-3 Assignment File # 20252119773 and related secured creditor documentation demonstrating assignment of debt directly to Trusheim; EXHIBIT 12 (FILED UNDER SEAL) - Complete federal filings documenting Trusheim's personal liability as assignee)*

21. Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION (a.k.a. FREDDIE MAC) is a federally chartered corporation that participated in the securitization, purchase, or holding of fraudulent securities issued based upon forged instruments, falsified borrower names, and manipulated loan documentation. FREDDIE MAC's participation in the securitization enterprise constitutes violation

 MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

of federal securities laws, REMIC trust requirements, and conspiracy to commit securities fraud. FREDDIE MAC's role as purchaser and investor in the fraudulently securitized loan is documented in MERS records, establishing FREDDIE MAC's direct knowledge of and participation in the securitization scheme. *(SEE EXHIBIT 18 - MERS Lookup Report showing Freddie Mac as Investor/Purchaser of securitized loan)*

22. Defendant U.S. BANK NATIONAL ASSOCIATION is the Indenture Trustee for the fraudulent securities and trust structures established through the securitization scheme. As Indenture Trustee, U.S. Bank had a fiduciary duty to verify the authenticity and accuracy of all instruments underlying the securities it held in trust. U.S. Bank's failure to detect, disclose, or remedy the forged instruments, falsified borrower names, and manipulated loan documentation constitutes breach of fiduciary duty, negligence, complicity in securities fraud, and conspiracy. U.S. Bank's continued holding of fraudulent securities while collecting fees from investors constitutes embezzlement and conversion of investor funds.

23. Defendant DEBRA BAKER is an individual serving as a Notary Public registered with the Colorado Secretary of State under authentic notary ID 20154002003 and as an Escrow Agent in the real estate industry. Baker notarized the Deed of Trust dated June 4, 2021, for the property at 10442 Beckham Street, Peyton, Colorado [80831], recorded at Reception Number 221109471. However, the notary stamp used on the Deed of Trust bears Colorado notary ID number 2015400003, which is INVALID, FORGED, or FRAUDULENTLY ALTERED, as this ID number does not exist anywhere in the Colorado Secretary of State notary database and does not match Baker's authentic registered notary ID (20154002003). The discrepancy between Baker's true notary ID (20154002003) and the false ID on the stamp (2015400003) constitutes prima facie evidence of notary fraud, forgery of a notary stamp, or unauthorized use of Baker's notary credentials. Defendant Baker either: (a) knowingly allowed her notary stamp to bear a false or invalid ID

number in violation of Colorado notary law; (b) knowingly used a forged notary stamp bearing an invalid ID number to notarize the Deed of Trust; (c) was complicit in the fraudulent notarization process with knowledge that the notary stamp bore a false ID; (d) was an unwitting participant whose notary credentials were fraudulently misused by other Defendants without her knowledge or authorization; or (e) deliberately participated in the scheme to create a fraudulently notarized instrument designed to appear authentic while bearing deliberate defects that would enable its fraudulent use and subsequent fraudulent securitization. Regardless of Baker's level of knowledge or intent, the use of a notary stamp bearing an invalid ID number (2015400003) to notarize a critical financial instrument (the Deed of Trust) constitutes notary fraud under Colorado law, forgery of an official notary stamp, violation of Colorado notary regulations (C.R.S. § 24-21-515), and conspiracy to commit fraud. Baker's participation in the notarization of the fraudulent Deed of Trust—either knowingly or through negligent misuse of her notary credentials—directly enabled Defendants' entire securitization fraud scheme by creating the appearance of a validly notarized security instrument while actually notarizing a document bearing a fraudulently altered or forged notary stamp with an invalid ID number. *(SEE EXHIBIT 8.1 - Colorado Secretary of State Official Notary Verification for Debra Baker ID 20154002003; EXHIBIT 8.2 - Comparative Analysis of Invalid Notary ID 2015400003 vs. Authentic ID 20154002003; EXHIBIT 8.3 - Notary Stamp Analysis Showing False/Invalid ID Number on Deed of Trust)*

24. Defendant STEWART TITLE COMPANY is a Foreign Corporation incorporated in the State of Texas (COLORADO SOS ID No. 20091294756, Status: Good Standing, Formation Date: May 29, 2009), with principal office at 1360 Post Oak Blvd., Suite 100, Houston, Texas [77056]. Stewart Title Company purchased the assets and business operations of the prior entity UNIFIED TITLE COMPANY, LLC, and acquired the rights to operate under the trade name "UNIFIED, A DIVISION OF STEWART." At the time of Plaintiffs' mortgage closing on June 4,

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

2021, Defendant Stewart Title Company, operating as "Unified, A Division of Stewart," served as the escrow agent, title company, and closing agent for the transaction involving the property at 10442 Beckham Street, Peyton, Colorado [80831]. Plaintiffs met with representatives of Unified (Stewart Title Company) at their office located in downtown Colorado Springs to finalize the closing of the mortgage transaction. As the escrow agent and closing agent for this transaction, Stewart Title Company had a professional and legal duty to: (a) verify the authenticity and validity of all documents presented for closing; (b) examine the notary acknowledgments and notary stamps for validity and compliance with Colorado law; (c) identify and flag any irregularities, defects, or discrepancies in loan documents, security instruments, and notary certifications; (d) confirm that loan identification numbers and other critical document identifiers were consistent across all closing documents; (e) conduct or verify a title search to identify any defects in title or prior liens; and (f) refuse to close and disburse funds if documents were defective, fraudulently notarized, bore signs of forgery or tampering, or if title defects existed.

25. Defendant Stewart Title Company failed in all of these professional duties. Specifically: (a) Stewart Title Company failed to detect or report the defective notary acknowledgment on page 11 of the Deed of Trust, which violated Colorado notary security protocols (C.R.S. § 24-21-515) by failing to include required cross-referencing information (document title, page count, party names); (b) Stewart Title Company failed to detect or report the forged notary stamp bearing invalid Colorado notary ID 2015400003, which does not exist in the Colorado Secretary of State notary database and does not match notary Debra Baker's authentic registered ID 20154002003; (c) Stewart Title Company failed to detect or report the loan number discrepancy between the Deed of Trust (loan number 256900R27 and Universal Loan ID 549300PBTV7FCWLSMM53-256900R27-88) and the loan identification used in MSF Servicing correspondence and IRS Form 1098 (loan number 0820897205), indicating

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

fraudulent manipulation of loan documentation; (d) Stewart Title Company failed to flag or investigate the deliberate separation of the notary acknowledgment from the signature page in violation of Colorado notary best practices and professional escrow standards.

26. Defendant Stewart Title Company's failure to perform these professional and legal duties enabled Defendants' entire securitization fraud scheme. By closing the transaction without detecting or reporting the defective notarization, forged notary stamp, and loan document discrepancies, Stewart Title Company provided the appearance of a validly closed and legitimately documented transaction, thereby enabling the fraudulent securitization of the property into Judicial Revenue Bonds and mortgage-backed securities. Stewart Title Company either: (a) was negligent in performing its professional duties as escrow and closing agent by failing to detect document defects that a competent title company should have caught during standard closing procedures; (b) knowingly failed to detect or report red flags in documents and notary stamps despite having professional expertise to do so; (c) was complicit in the fraud by deliberately overlooking red flags and proceeding with closing despite knowing of document defects; or (d) was instructed by other Defendants (including Janeway Law Firm, Mortgage Solutions of Colorado, and MSF Servicing) to ignore defects and close the transaction regardless of document authenticity. Defendant Stewart Title Company's actions constitute: breach of professional escrow duties; negligence in the performance of closing and title company services; violation of Colorado escrow agent and title company regulations; failure to exercise reasonable care in document examination; and conspiracy to commit fraud. *(SEE EXHIBIT 1 - Original Deed of Trust showing loan number discrepancies and forged notary stamp with invalid ID; EXHIBIT 8.1, 8.2, 8.3 - Notary Stamp Analysis and Verification Package demonstrating defects that should have been detected at closing)*

27. Defendants JOHN AND JANE DOES 1-25 are unknown individuals or entities

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

whose identities will be established through discovery, who participated in the fraudulent securitization scheme, the recording of forged instruments, the falsification of borrower names, the manipulation of loan documentation, and the concealment of the conspiracy.

## FACTUAL ALLEGATIONS

### A. The Fraudulent Securitization Scheme – Loan Number Discrepancies and Document Tampering

28. On June 4, 2021, Plaintiffs STEFFANY ROSE HAMNER©™ and THOMAS PATRICK HAMNER executed a Deed of Trust for the property at 10442 Beckham Street, Peyton, Colorado [80831], identifying themselves with correct legal spelling as "THOMAS HAMNER AND STEFFANY HAMNER©™." *(SEE EXHIBIT 4 - Original Deed of Trust, Reception No. 221109471, showing correct borrower names, loan number 256900R27, Universal Loan ID 549300PBTV7FCWLSMM53-256900R27-88, and forged notary stamp bearing invalid notary ID 2015400003)*

29. The original Deed of Trust, recorded at Reception Number 221109471, identified the loan by the following identifiers:
    - Loan Number (as listed in Deed of Trust): 256900R27
    - Universal Loan ID: 549300PBTV7FCWLSMM53-256900R27-88
    - Original note amount: $440,368.00

30. The Deed of Trust appears to be recorded in the real property records of El Paso County, Colorado, at Reception Number 221109471, with correct party identification and without any falsification of the borrowers' names.

31. However, when Plaintiffs received a Qualified Written Request (QWR) response from MSF Servicing dated December 1, 2025, MSF Servicing identified a COMPLETELY DIFFERENT loan number: 0820897205. *(SEE EXHIBIT 5 - QWR Response from MSF Servicing showing loan number 0820897205 discrepant from Deed of Trust loan number 256900R27)*

32. Additionally, when Plaintiffs received their IRS Form 1098 mortgage interest statement from MORTGAGE SOLUTIONS OF COLORADO LLC, the loan number listed was 0820897205—NOT the 256900R27 listed in the original Deed of Trust. *(SEE EXHIBIT 7 - IRS Form 1098 Mortgage Interest Statement from Mortgage Solutions of Colorado LLC showing loan number 0820897205)*

33. The existence of THREE DIFFERENT LOAN NUMBERS for the same property and same Plaintiffs indicates either: (a) fraudulent manipulation of loan documentation to obscure the true identity of the debt; (b) commingling of Plaintiffs' loan with other loans to facilitate securitization fraud; (c) deliberate creation of multiple loan identifiers to enable simultaneous collection efforts under different loan numbers; or (d) systematic identity fraud by Defendants to obscure the chain of title and enable foreclosure without proper standing. Additionally, MSF Servicing's QWR response included loan documentation for a completely different property (10842 Witcher Drive, Colorado Springs, Colorado 80925) with a different loan number (261670R27) and different borrowers (Jose L Velez Gonzalez and Aileen Marie Correa Roig), indicating systematic commingling of loans and fraudulent manipulation of loan files to obscure true borrower identity and loan status. This loan number manipulation is a direct predicate act of the RICO conspiracy, as it facilitates securities fraud by obscuring the true underlying collateral and borrower identification in securitized instruments. *(SEE EXHIBIT 17 - QWR Response with VA Assumption Policy Rider for 10842 Witcher Drive Property showing commingling of unrelated loan in Plaintiffs' account response)*

34. This loan number manipulation is a direct predicate act of the RICO conspiracy, as it facilitates securities fraud by obscuring the true underlying collateral and borrower identification in securitized instruments.

**B. Notary Acknowledgment Defect – Deliberate Document Tampering and Notary Fraud**

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

35. Pages 10 and 11 of the original Deed of Trust contain a critical and deliberate defect: the notary acknowledgment is intentionally placed on page 11 (a completely separate page) despite there being ample space on page 10 (the signature page) to include the notary acknowledgment directly under Plaintiffs' signatures.

36. Under Colorado Revised Statutes (C.R.S.) § 24-21-515, which governs the Revised Uniform Law on Notarial Acts (RULONA), a notary acknowledgment is permitted on a separate sheet, BUT ONLY IF STRICT SECURITY PROTOCOLS ARE FOLLOWED. Colorado law requires that when a notary acknowledgment is executed on a separate page, it must be "securely attached" to the principal document (typically via staple or binding), and must include explicit cross-referencing information to prevent fraudulent detachment and re-attachment to different documents.

37. The Colorado Department of Education Notary Handbook and the National Notary Association (NNA) mandate that notaries who use separate certificates MUST explicitly write a description of the primary document directly on the separate certificate, including: (a) the title or type of document; (b) the document's date; (c) the total number of pages of the main document; and (d) the names of the parties who signed it.

38. The notary acknowledgment on page 11 of the Deed of Trust VIOLATES these Colorado security requirements because:

a. The notary page DOES NOT name the title of the document (i.e., does not identify it as a "Deed of Trust");

b. The notary page DOES NOT identify how many pages the document is;

c. The notary page provides no cross-referencing description of the principal document;

d. There is no indication the notary certificate is securely attached to the principal document (no staple marks, binding, or other attachment evidence);

e. The entire notary acknowledgment text, notary's official signature, and notary

stamp do not all reside on the exact same page—indicating potential page separation or replacement.

39. The separation of the notary acknowledgment from the signature page, COMBINED WITH the absence of required cross-referencing information, creates systematic ambiguity and fraud indicators regarding: (a) which signatures the notary actually acknowledged; (b) whether the notary even witnessed the actual signings; (c) whether the document pages were assembled in proper sequence; (d) whether the notary certificate was fraudulently detached from the original document and re-attached; (e) whether the notary certificate belongs to this document or to a different document entirely; and (f) whether fraud was committed during the notarization process.

40. This deliberate violation of Colorado notary security protocols—combined with the failure to include mandatory cross-referencing information—demonstrates that Defendants deliberately violated Colorado law to create a defective, challengeable, and fraudulently manipulable notary acknowledgment. The defect was not accidental; it was intentional, as evidenced by the available space on page 10 and Defendants' deliberate choice to separate the notary acknowledgment onto page 11 without the required security documentation.

41. The deliberate absence of the required document title, page count, and cross-referencing information on the notary page proves that either: (a) the notary who acknowledged the document intentionally omitted these security protocols to facilitate fraud; or (b) the notary page was fraudulently replaced or altered AFTER the original notarization to remove identifying information and enable the page to be fraudulently re-attached to different documents.

## C. Notary Fraud – Forged Notary Stamp and Invalid Notary ID

42. The notary who allegedly notarized the Deed of Trust is identified as "Debra Baker" with a notary stamp bearing Colorado notary ID # 2015400003. However, when Plaintiffs conducted official verification through the Colorado Secretary of

    MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

State website, this notary ID number DOES NOT EXIST anywhere in the Colorado notary database.

43. A search of the Colorado Secretary of State Verify a Notary page using the notary ID number 2015400003 yields NO RESULTS and reveals that this ID number is invalid and unregistered.

44. When Plaintiffs conducted a name-based search on the Colorado Secretary of State Verify a Notary page, searching strictly by the name "Debra Baker" (leaving the ID field blank), the search returned a COMPLETELY DIFFERENT notary ID number: 20154002003—NOT 2015400003. This is Debra Baker's authentic, valid notary ID number as registered with the Colorado Secretary of State. *(SEE EXHIBIT 8.1 - Colorado Secretary of State Official Notary Verification for Debra Baker ID 20154002003; EXHIBIT 8.2 - Comparative Analysis of Invalid Notary ID 2015400003 vs. Authentic ID 20154002003; EXHIBIT 8.3 - Notary Stamp Analysis Showing False/Invalid ID Number on Deed of Trust)*

45. The notary stamp on the Deed of Trust contains an INVALID, FORGED, or FRAUDULENTLY ALTERED notary ID number (2015400003) that does not correspond to any registered Colorado notary and does not match Debra Baker's true state-registered notary ID (20154002003).

46. This discrepancy between the stamp ID (2015400003) and the authentic ID (20154002003) constitutes prima facie evidence that: (a) the notary stamp used on the Deed of Trust is forged or fraudulently altered; (b) the notarization itself is legally defective and void; (c) the notary acknowledgment does not represent a valid notarization by an authorized Colorado notary; (d) someone deliberately used a false or fraudulent notary stamp bearing an invalid ID number to create the appearance of a valid notarization.

47. Debra Baker, the purported notary, is an escrow agent in the real estate industry and is registered with the Colorado Secretary of State under notary ID 20154002003. The fact that her legitimate notary stamp should bear ID 20154002003—not 2015400003—proves that the stamp used on the Deed of

Trust does not belong to Debra Baker or was deliberately altered to contain a false ID number.

48. This notary fraud constitutes multiple violations of Colorado law, including:

a. Forgery of a notary stamp (a felony under Colorado law);

b. Fraud in the notarization process;

c. Use of a false or invalid notary ID number to create fraudulent instruments;

d. Violation of Colorado notary law by using a notary stamp that does not match the notary's true state registration;

e. Creating a fraudulently notarized document designed to appear legitimate while bearing a false notary ID.

49. The fraudulent notary stamp and invalid notary ID constitute evidence that Defendants deliberately created and recorded a fraudulently notarized Deed of Trust to conceal the true origins of the debt and to facilitate the securitization scheme. The use of a forged or falsified notary stamp demonstrates intentional malice and preplanned fraud by Defendants.

50. This notary acknowledgment defect—compounded by the forged or falsified notary stamp bearing an invalid ID number—renders the entire Deed of Trust void ab initio and subject to complete challenge as to its authenticity, validity, and legal effect. The fraudulent notarization destroys any presumption that the Deed of Trust was validly executed, validly notarized, or legally recorded.

51. The notary fraud also constitutes violation of Colorado notary law (C.R.S. § 24-21-515) and creates personal liability for any person who created, used, or relied upon the fraudulent notary stamp, and vicarious liability for any entity that benefited from the defective or forged notarization (including all Defendants who relied upon, promoted, or exploited the fraudulent Deed of Trust).

52. The fraudulent notary stamp and falsified notary ID number are direct evidence of the systematic fraud perpetrated by Defendants and demonstrate that the Deed of Trust was created as a fraudulent instrument from inception—designed to appear legitimate through false notarization while concealing the true origins of

the debt and enabling the unauthorized securitization of Plaintiffs' property.

## D. Stewart Title Company's Professional Negligence and Escrow Agent Failures

53. Defendant STEWART TITLE COMPANY, a Foreign Corporation incorporated in Texas (COLORADO SOS ID No. 20091294756), operating under the trade name "UNIFIED, A DIVISION OF STEWART," served as the escrow agent and closing agent for Plaintiffs' mortgage transaction closing on June 4, 2021. Stewart Title Company had acquired the assets and business operations of UNIFIED TITLE COMPANY, LLC and the rights to operate under the Unified trade name.

54. At the closing meeting on June 4, 2021, held at Stewart Title Company's office located in downtown Colorado Springs, Plaintiffs were present along with representatives of Stewart Title Company, their mortgage loan officer, and other parties to the transaction. Plaintiffs relied on Stewart Title Company's professional representation that the transaction was properly documented, authenticated, and ready to close.

55. As the escrow agent and closing agent, Stewart Title Company had explicit professional and legal duties under Colorado law and industry standards to: (a) verify the authenticity and validity of all documents before releasing funds and recording the deed; (b) examine notary acknowledgments and notary stamps for compliance with Colorado notary law (C.R.S. § 24-21-515); (c) identify and report any irregularities, defects, or red flags in loan documents and security instruments; (d) confirm that party names matched consistently across all documents; (e) verify that loan identification numbers and document identifiers were consistent across all closing documents; (f) conduct or verify title searches for defects; and (g) refuse to close if documents bore signs of forgery, fraud, or tampering.

56. Defendant Stewart Title Company failed to detect or report the defective notary acknowledgment on page 11 of the Deed of Trust. The notary acknowledgment was deliberately separated from the signature page (page 10) in violation of

Colorado notary security protocols (C.R.S. § 24-21-515), which require that if a notary acknowledgment is placed on a separate page, it must include: (a) the title or type of document; (b) the document's date; (c) the total number of pages; and (d) the names of the parties who signed it. The notary page contained NONE of this required cross-referencing information, creating a defective notary acknowledgment that should have been immediately apparent to any competent title company during document review.

57. Defendant Stewart Title Company failed to detect or report the forged notary stamp bearing invalid Colorado notary ID 2015400003. A competent title company conducting even basic notary verification procedures would have immediately discovered that the ID number on the stamp (2015400003) does not match the SOS database and does not correspond to any valid Colorado notary. Debra Baker's authentic registered notary ID is 20154002003—not 2015400003. This red flag should have halted the closing and triggered a fraud investigation. By failing to verify the notary stamp against the Colorado Secretary of State database—a standard escrow procedure—Stewart Title Company enabled the fraudulent document to be recorded.

58. Defendant Stewart Title Company failed to detect or report the loan number discrepancy embedded in the Deed of Trust and loan documents. The Deed of Trust identified the loan by: (a) Loan Number 256900R27; and (b) Universal Loan ID 549300PBTV7FCWLSMM53-256900R27-88. However, loan documents prepared by or for Mortgage Solutions of Colorado identified loan numbers that would later prove inconsistent with these identifiers. A competent title company should have caught this discrepancy during closing by comparing the loan number on the Deed of Trust against the loan number on other loan documents. This loan number inconsistency indicates fraudulent manipulation of loan documentation and should have triggered immediate investigation and closure denial.

59. By failing to detect these obvious document defects—the defective notary

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

acknowledgment, the forged notary stamp with an invalid ID number, and the loan number discrepancies—Stewart Title Company failed to protect Plaintiffs and failed to prevent the fraudulent securitization of their property. Stewart Title Company's negligence enabled the entire fraud scheme by certifying that the transaction was complete and legitimate, thereby allowing the fraudulent Deed of Trust to be recorded and subsequently securitized into Judicial Revenue Bonds and mortgage-backed securities.

Stewart Title Company either: (a) was negligent in failing to perform standard escrow and closing procedures; (b) deliberately overlooked obvious red flags in documents; (c) was instructed by other Defendants (including Mortgage Solutions of Colorado, LLC) to close regardless of defects; or (d) was complicit in the fraud by allowing the fraudulent transaction to close and be recorded. In any scenario, Stewart Title Company's conduct constitutes breach of professional duty, negligence, violation of Colorado escrow regulations, and conspiracy to commit fraud. *(SEE EXHIBIT 4 - Original Deed of Trust showing loan number discrepancies and forged notary stamp; EXHIBIT 5 - QWR Response showing discrepant loan number 0820897205; EXHIBIT 8.1, 8.2, 8.3 - Notary Stamp Analysis and Verification Package demonstrating defects that competent escrow agent should have detected at closing)*

### E. The Unprecedented Sale of a First Mortgage to a Debt Collector – Admission of No Standing

61. In an unprecedented action, Defendant MORTGAGE SOLUTIONS OF COLORADO, LLC (trading as MORTGAGE SOLUTIONS FINANCIAL and MSF SERVICING) SOLD PLAINTIFFS' FIRST MORTGAGE DEBT TO JANEWAY LAW FIRM, P.C., A DEBT COLLECTION LAW FIRM.

62. Plaintiffs received formal notice from Janeway Law Firm stating that Janeway had "acquired" Plaintiffs' debt and that "Janeway Law Firm may be deemed a debt collector" under the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et

seq.). *(SEE EXHIBIT 3 - Notice of Debt Acquisition from Janeway Law Firm)*

63. The sale of a first/primary mortgage to a debt collector is UNPRECEDENTED in American lending practice and case law. Extensive research reveals:

- Second mortgages and HELOCs (junior liens) are commonly sold to debt collectors
- FIRST mortgages are virtually NEVER sold to debt collectors
- Multiple documented cases of "zombie mortgages" (CFPB, NPR, Bloomberg) ALL involve SECOND mortgages, NOT first mortgages
- No documented case law exists of a primary first mortgage being sold to a debt collector

64. First mortgages are secured by the property itself and grant the lender alleged "first lien priority"—meaning the lender gets paid first in foreclosure. A rational lender would NEVER sell a first mortgage to a debt collector for pennies when the lender could:

- Foreclose on the property and obtain full value
- Sell the mortgage to another mortgage company or investor
- Hold the mortgage in a securitized trust generating ongoing revenue

65. The ONLY reason a lender sells a first mortgage to a debt collector is if the lender KNOWS it cannot foreclose and has NO STANDING. This is an admission by Mortgage Solutions that:

- The debt is unenforceable
- The lender has no valid security interest
- The lender cannot foreclose on the property
- Plaintiffs have superior claims (including superior secured creditor status via UCC-3 Assignment and federal priority liens)
- The lender is capitulating and cutting its losses

66. MSF's sale of Plaintiffs' first mortgage to Janeway is tantamount to a formal admission in writing that MSF has NO STANDING to foreclose and NO ENFORCEABLE SECURITY INTEREST. This admission destroys the entire

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

predicate for any foreclosure proceeding, any collection action, and any claim of security against the property.

67. This unprecedented debt sale further establishes that the "loan" itself may have been securitized into an MBS trust, paid off through securitization proceeds, and the debt may be completely discharged—a fact that Defendants have deliberately concealed from Plaintiffs.

## F. Deliberate Falsification of Court

68. On April 1, 2026, at 4:23 PM, Defendants JANEWAY LAW FIRM, P.C. and LYNN M. JANEWAY deliberately filed a Verified Motion for Order Authorizing A Foreclosure Sale Under C.R.C.P. 120 in Case No. 2026CV30810 in the Fourth Judicial District, El Paso County, Colorado. However, Defendants intentionally filed this case under the FALSIFIED party name "STEFFANY HAMMER" (with double M—the INCORRECT spelling) instead of the correct legal name "STEFFANY HAMNER" (single M). *(SEE EXHIBIT 09 - Exemplified Copy Certificate, certified May 27, 2026, showing incorrect party name "STEFFANY HAMMER")* Despite possessing accurate Deed of Trust (Reception No. 221109471) identifying the borrowers with correct spelling as "THOMAS HAMNER AND STEFFANY HAMNER," and despite having access to all accurate identification documents, Janeway Law Firm deliberately filed the foreclosure case under the falsified party name to create identity confusion and obstruct Plaintiffs' ability to locate or respond to the proceedings.

69. This deliberate name falsification is confirmed by Colorado docket records. When Plaintiff STEFFANY HAMNER conducted a diligent search of the Colorado court docket website using her correct legal name "STEFFANY HAMNER," the search returned ZERO RESULTS for any C.R.C.P. 120 rule hearing or foreclosure proceeding. The absence of results using her correct name proves that Janeway Law Firm filed the case under a false party name. The case exists only under the falsified name "STEFFANY HAMMER" because that is the name Janeway

deliberately used in the court filing. Additionally, the ICON report (the court's official case information document printed by the Fourth Judicial District) also displays this name discrepancy, confirming that the official court records show the case filed under the incorrect spelling "STEFFANY HAMMER" rather than the correct legal name "STEFFANY HAMNER." This deliberate falsification of the party name in the official court filing constitutes: (a) fraud in the inducement of court jurisdiction; (b) identity fraud; (c) deliberate obstruction of Plaintiffs' right to notice and opportunity to be heard; (d) violation of Colorado Rules of Civil Procedure requiring accurate party identification; (e) deliberate deprivation of due process through service defect caused by intentional name falsification; and (f) conspiracy to commit fraud by coordinating with court officials to process and maintain the fraudulent case caption. *(SEE EXHIBIT 10 - Colorado Court Docket Search Results showing ZERO results for "STEFFANY HAMNER" in Rule 120 proceedings; EXHIBIT 11- ICON Report from Fourth Judicial District showing case filed under "STEFFANY HAMMER"; EXHIBIT 09 - Exemplified Copy Showing Incorrect Party Name)*

70. On May 13, 2026, the court mailed notice of the foreclosure proceedings to the parties at record. However, the service envelope was addressed to "STEFFANY HAMMER" (with double M—the INCORRECT spelling) and was stamped "UNABLE TO FORWARD" by the postal service, indicating that the court had no valid address for service and that service was defective. *(SEE EXHIBIT 09 - Court Service Envelope with "UNABLE TO FORWARD" Stamp, dated May 13, 2026)*

71. This defective service constitutes a violation of Colorado Rules of Civil Procedure and due process requirements, as Plaintiffs were not properly noticed of the foreclosure proceedings. The deliberate use of the falsified name "STEFFANY HAMMER" on the service envelope demonstrates a coordinated scheme to ensure service would fail and Plaintiffs would be unable to respond to the fraudulent foreclosure action. This systematic identity fraud and service defect

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

violates Plaintiffs' fundamental right to notice and opportunity to be heard before deprivation of property.

72. On May 27, 2026, Defendant SHERI KING, Clerk of the Combined Courts, El Paso County, Colorado, issued an exemplified copy certificate certifying the Verified Motion for Order Authorizing A Foreclosure Sale. By placing the official court seal on these documents, Defendant King certified their accuracy and authenticity.

73. However, the exemplified certificate proves that Defendant King KNEW the correct spelling of Plaintiffs' names ("THOMAS HAMNER AND STEFFANY HAMNER") because the certificate itself contains the correct spelling in multiple places. Yet King certified documents that contained inconsistencies, defects, and the falsified spelling "HAMMER" on the court service envelope.

74. By certifying documents with known defects and inconsistencies, Defendant King knowingly participated in the falsification of court records and the perpetration of fraud against Plaintiffs.

75. The Verified Motion for Order Authorizing A Foreclosure Sale Under C.R.C.P. 120 filed by Defendants JANEWAY LAW FIRM, P.C. and LYNN M. JANEWAY on April 1, 2026, at 4:23 PM bears the case caption "STEFFANY HAMMER" (double M)—a name that does not belong to either Plaintiff and does not match any legal document in the transaction file. The correct legal names of the borrowers, as established in the Deed of Trust (Reception No. 221109471) and all loan documents, are "THOMAS HAMNER AND STEFFANY HAMNER" (single M). Janeway's use of the false name "STEFFANY HAMMER" in the official court filing was not an isolated clerical error confined to the case caption; rather, it reflected a deliberate pattern of name falsification that extended across multiple documents (service envelopes, exemplified certificates, and ICON reports). By consistently using the wrong spelling throughout the foreclosure proceedings, Janeway created an official record that is divorced from Plaintiffs' true identities and therefore invisible to anyone searching Colorado court records using

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

Plaintiffs' correct names. This systematic substitution of a false party name for the true parties accomplished multiple strategic objectives: it obscured Plaintiffs' ability to locate the proceedings, it created grounds to argue defective service, and it established a false identity trail that could later be exploited to cloud title to the property.

76. This deliberate name falsification is confirmed by Colorado docket records. When Plaintiff STEFFANY HAMNER conducted a diligent search of the Colorado court docket website using her correct legal name "STEFFANY HAMNER," the search returned ZERO RESULTS for any C.R.C.P. 120 rule hearing or foreclosure proceeding. The absence of results using her correct name proves that Janeway Law Firm filed the case under a false party name. The case exists only under the falsified name "STEFFANY HAMMER" because that is the name Janeway deliberately used in the court filing. Additionally, the ICON report (the court's official case information document printed by the Fourth Judicial District) also displays this name discrepancy, confirming that the official court records show the case filed under the incorrect spelling "STEFFANY HAMMER" rather than the correct legal name "STEFFANY HAMNER." This deliberate falsification of the party name in the official court filing constitutes: (a) fraud in the inducement of court jurisdiction; (b) identity fraud; (c) deliberate obstruction of Plaintiffs' right to notice and opportunity to be heard; (d) violation of Colorado Rules of Civil Procedure requiring accurate party identification; (e) deliberate deprivation of due process through service defect caused by intentional name falsification; and (f) conspiracy to commit fraud by coordinating with court officials to process and maintain the fraudulent case caption.

## F. Priority Lien Recording Obstruction – Steve Schleiker's Unlawful Denial

77. On October 17, 2025, Plaintiffs perfected a superior priority lien on the subject property under 46 U.S.C. § 30908 (Vessel Supremacy Doctrine & Exemption Doctrine) and 46 U.S.C. § 30912 (Priority Doctrine), establishing supreme priority

over all other liens, claims, and encumbrances. Defendant STEVE SCHLEIKER, El Paso County Clerk and Recorder, RECORDED THIS PRIORITY LIEN in El Paso County records, thereby accepting federal jurisdiction over the lien, acknowledging the validity of the lien, and agreeing to respect federal maritime law supremacy. The detailed documentation of this priority lien, including all correspondence, recordings, and related federal court filings, has been filed under seal with this Court *(SEE EXHIBIT 12 - FILED UNDER SEAL)*

78. Subsequently, Plaintiffs submitted additional documents for recording that would perfect and enforce Plaintiffs' superior secured creditor status and priority lien position. These documents are essential for federal diversity jurisdiction perfection and for establishing Plaintiffs' absolute priority over all other creditors and lienholders.

79. In a blatant violation of Colorado Recording Act (C.R.S. § 30-10-406), which establishes recording as a NON-DISCRETIONARY MINISTERIAL DUTY, Defendant SCHLEIKER REFUSED TO RECORD these critical documents.

80. Schleiker's refusal was based on an unlawful "email pre-approval" requirement that is NOT mandated by Colorado law. Schleiker demanded that Plaintiffs obtain "email pre-approval" from county legal counsel or other officials before Schleiker would record the documents—a requirement that has no basis in Colorado statute or regulation.*(SEE  EXHIBITS BB, CC, DD, and EE, FOUND IN EXHIBIT 12 FILED UNDER SEAL)*

81. Schleiker's multiple unlawfuls denial is motivated by CLEAR CONFLICT OF INTEREST: Schleiker is a NAMED DEFENDANT in Plaintiff's Massachussetts federal case. By refusing to record documents that would perfect Plaintiffs' NOTICE OF LIS PENDENS and priority lien, Schleiker is acting as a gatekeeper to protect himself and other Defendants from the consequences of Plaintiffs' superior secured creditor status.*(SEE EXHIBIT 13 – Email Chain: Steve Schleiker and Kenny Hodges)*

82. Schleiker indefinitely delayed the recording for 60+ days without issuing a formal

statutory denial (C.R.S. § 30-10-403) as required by law. When Plaintiff subsequently demanded that County Attorney Kenny Hodges compel Schleiker to provide a proper written denial or approval, Hodges ignored all demands and email requests served via registered mail, thereby joining Schleiker in the 60+ day obstruction of Plaintiff's federal priority lien perfection.

83. Schleiker's actions constitute:

- Violation of ministerial duty under C.R.S. § 30-10-406
- Violation of federal maritime law supremacy (46 U.S.C. § 30908, § 30912)
- Interference with federal diversity jurisdiction perfection
- Obstruction of federal court proceedings
- Computer fraud through unlawful use of email approval systems to deny public recording services
- Official misconduct under C.R.S. § 18-8-404
- Abuse of administrative process
- Violation of due process rights
- Conflict of interest while serving as a named defendant

84. Schleiker's unlawful denial directly violates federal maritime law supremacy doctrine (46 U.S.C. § 30908) and the Priority Doctrine (46 U.S.C. § 30912), both of which establish that federal priority liens have ABSOLUTE PRIORITY over all other liens and must be recorded and enforced. Schleiker's refusal to record Plaintiffs' priority lien documents constitutes direct violation of federal law and federal supremacy over state recording requirements.

85. Furthermore, Schleiker's indefinite delay and ultimate refusal to record violates Plaintiffs' Fifth Amendment Due Process rights by preventing Plaintiffs from perfecting their secured creditor status and superior lien position.

## G. Regulatory Violations and Pattern of Non-Compliance

86. CONNECTICUT BANKING DEPARTMENT CONSENT ORDER: The Connecticut Banking Department issued a formal Consent Order against

Defendant MORTGAGE SOLUTIONS OF COLORADO, LLC for failure to file proper NMLS branch office changes and other regulatory non-compliance. This Consent Order establishes a pattern of regulatory violation and demonstrates that Mortgage Solutions operates with systematic disregard for regulatory requirements.

87. FEDERAL RESERVE AUTOMATED CLEARING HOUSE (ACH) VIOLATIONS: Records indicate systematic violations of ACH transfer protocols and improper handling of electronic funds transfers related to Plaintiffs' mortgage account.

88. FDCPA VIOLATIONS: By selling Plaintiffs' first mortgage to Janeway Law Firm and allowing Janeway to act as a debt collector, Defendants admit that either (a) the debt is charged off, or (b) Defendants are debt collectors themselves. Either admission constitutes violation of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), including:

- FDCPA § 1692e: False, deceptive, or misleading representation
- FDCPA § 1692f: Unfair or unconscionable means to collect debt
- FDCPA § 1692g: Failure to provide required notice of rights

89. RESPA VIOLATIONS: Defendants violated the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) by:

- Failing to respond to Plaintiffs' Qualified Written Request (QWR) within 30 days
- Failing to provide accurate loan account information
- Failing to provide accurate accounting and payment records
- Imposing unlawful fees and charges *(SEE EXHIBIT 5 - QWR Response)*

90. TILA VIOLATIONS: Defendants violated the Truth in Lending Act (15 U.S.C. § 1601 et seq.) by:

- Failing to accurately disclose loan terms and conditions
- Failing to disclose the true principal loan amount and loan number

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

identifiers

- Manipulating loan identification numbers and creating multiple identifiers for the same loan

- Failing to provide required periodic statements and accounting *(SEE EXHIBIT 7 - IRS 1098 Statement with Incorrect Loan Number; SEE EXHIBIT 5 - QWR Response)*

## H. Identity Theft, Records Tampering, and Computer Fraud

91. Defendants engaged in IDENTITY THEFT by using falsified party name references and multiple loan number identifiers in court filings, recorded instruments, and financial statements. By using the incorrect spelling "HAMMER" on court service envelopes and in other documents, Defendants created fictitious entities and obscured Plaintiffs' true identities.

92. Defendants engaged in AGGRAVATED IDENTITY THEFT under Colorado law (C.R.S. § 18-5-903) by using Plaintiffs' names and identities without authorization to:

- File court proceedings
- Record fraudulent instruments
- Create fraudulent financial instruments and securities
- Perpetrate the entire securitization scheme

93. Defendants engaged in RECORDS TAMPERING by:

- Recording fraudulent instruments in El Paso County records
- Creating false encumbrances on the property
- Embedding fraudulent documents in official county records under false borrower identities

94. Defendants engaged in COMPUTER FRAUD by:

- Unauthorized alteration of legal names in electronic recording systems
- Misuse of official recording authority to file fraudulent documents
- Manipulation of electronic mortgage servicing systems to generate false

   MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

loan account information

- Use of email systems to impose unlawful pre-approval requirements (Schleiker's email denial scheme)
  *(SEE EXHIBIT 12 FILED UNDER SEAL and EXHIBIT 09 - Email Correspondence re: Unlawful Recording Denial)*

## I. Official Misconduct and Breach of Fiduciary Duty

95. Defendants engaged in OFFICIAL MISCONDUCT (C.R.S. § 18-8-404) by:
    - Violating statutory duties to accurately record documents (Schleiker)
    - Violating judicial oath and duty to administer justice impartially (McPherson)
    - Failing to investigate complaints and respond to petitions for redress (Hodges, Broerman, King)
    - Concealing evidence of federal crimes
    - Suppressing Plaintiffs' lawful filings and petitions

96. Defendants engaged in BREACH OF FIDUCIARY DUTY by:
    - Trusheim ignoring the UCC-3 Assignment of Debt and fiduciary letter of appointment
    - U.S. Bank (as Indenture Trustee) failing to verify authenticity of securities and underlying instruments
    - McPherson (as Judge) approving foreclosure while named as defendant in related litigation
    - Schleiker (as Recorder) refusing to record documents perfecting superior liens
    - Stewart Title Company (as Escrow Agent) failing to detect and report document defects

## J. Judicial Misconduct and Conflict of Interest

97. Defendant KELLY JUNE MCPHERSON, serving as District Court Judge for the Fourth Judicial District, authorized the unlawful foreclosure sale of Plaintiffs' property at 10442 Beckham Street on or about July 27, 2026 (the date of the fraudulent "Order Approving Sale"), despite receiving notice of Plaintiffs' fraud claims, evidence of securitization fraud, and a comprehensive Notice of Bond Claim that explicitly enjoined BOTH the Beckham Street foreclosure AND the related foreclosure proceeding on Plaintiffs' property at 519 Swope Avenue, Colorado. The Notice of Bond Claim established that the scheme and pattern of fraudulent securitization, forged/altered documents, and unlawful foreclosure was identical across both properties, with the 519 Swope Avenue fraud being even more egregious, revealing duplicate forged and deliberately altered deeds (Reception No. 222037856 and others) that were deliberately filed and recorded by Defendant CHARLES (CHUCK) BROERMAN, who serves as El Paso County Treasurer and Public Trustee. The Notice of Bond Claim put McPherson on explicit notice that: (a) a coordinated fraudulent securitization scheme was perpetrated against Plaintiffs involving multiple properties; (b) forged and altered deeds had been deliberately recorded by county officials; (c) the same pattern of fraud was occurring simultaneously across both properties; and (d) the foreclosure proceedings themselves were vehicles for the perpetuation of ongoing fraud. Despite this comprehensive notice of systematic fraud involving forged county-recorded documents and pattern foreclosure abuse, McPherson proceeded to authorize the Beckham Street foreclosure sale, thereby actively facilitating the continuation of the fraudulent scheme that had already been exposed on the Swope Avenue property.

98. McPherson issued an order compelling all parties to contact Plaintiffs in good faith to conduct a settlement conference for related foreclosure case number 2026-CV-31501 taking place simultaneously against Plaintiff's other jointly-owned property., thereby acknowledging receipt of Plaintiffs' evidence and implicitly acknowledging the validity of Plaintiffs' fraud claims. *(SEE EXHIBIT 14 - Order*

*Compelling Settlement Conference acknowledging Plaintiffs' fraud claims, Plaintiffs' active federal case (filed under seal), and compelling good-faith settlement negotiations)*

99. Despite this acknowledgment, McPherson proceeded to authorize the foreclosure sale through her Order Approving Sale on July 27, 2026, constituting a clear conflict of interest, judicial misconduct, and violation of her duty to administer justice impartially. Most egregiously, McPherson's Order Compelling Settlement Conference (issued prior to the foreclosure authorization) explicitly acknowledged receipt of Plaintiffs' evidence of fraud and Plaintiffs' active federal litigation (details filed under seal, SEE EXHIBIT 12), yet McPherson then authorized the foreclosure sale anyway—a direct contradiction that proves McPherson knew of the fraud, knew of the federal case, and proceeded with the foreclosure regardless. *(SEE EXHIBIT 14 - Order Compelling Settlement Conference acknowledging Plaintiffs' fraud claims, Plaintiffs' active federal case (filed under seal), and compelling good-faith settlement negotiations)*

100. McPherson is currently a named defendant in related litigation pending in the United States District Court for the District of Massachusetts, which operates as a private tribunal proceeding overseen by MAKARIOS LIVING TEMPLE TRUST™, a foreign ecclesiastical sovereign entity. This private tribunal is established strictly as an equity proceeding under divine law and natural law, and serves exclusively to allow Plaintiffs the opportunity to build and correct the record regarding the fraudulent securitization scheme, forged documents, and unlawful foreclosure proceedings. The private tribunal is not intended to be used as a means for causing any harm to any party; rather, it functions solely as an equitable forum for documenting the systematic fraud and establishing the factual and legal record in accordance with ecclesiastical principles and divine law. McPherson's simultaneous status as a named defendant in this private ecclesiastical tribunal, while continuing to preside over foreclosure matters affecting the same Plaintiffs in Colorado state court, creates an untenable conflict

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

of interest that violates her judicial oath and due process obligations. McPherson's authorization of the foreclosure sale while serving as a named defendant in related federal litigation constitutes a manifest conflict of interest that violates her judicial oath, violates canons of judicial conduct (Colorado Rules of Professional Conduct), and denies Plaintiffs due process.

101. This manifest conflict of interest is further compounded and rendered absolutely untenable by McPherson's continued presiding over related foreclosure matters involving both the 10442 Beckham Street property AND the related 519 Swope Avenue property, while simultaneously being a named defendant arising from the identical fraudulent scheme affecting both properties. Most egregiously, McPherson has scheduled an October 7, 2026 hearing in the state court foreclosure proceeding on the 519 Swope Avenue property and has attempted to order a settlement conference in which she would directly oversee settlement negotiations regarding the proven fraud on that same property.

102. McPherson cannot simultaneously serve as: (a) a named defendant in litigation addressing the fraudulent securitization and forged documents on both properties; (b) the presiding judge ordering settlement conferences and conducting hearings on those same properties; and (c) the judicial officer negotiating or approving any settlement of claims that directly implicate her own misconduct and liability as a defendant. This is not merely a conflict of interest—it is a fundamental breach of fiduciary duty, a violation of her judicial oath, and an attempt to use her judicial authority to control and manipulate settlement negotiations regarding matters in which she is a named party defendant. McPherson cannot "have her cake and eat it too" by appearing as a defendant in litigation while simultaneously wielding judicial authority over the very matters that are the subject of that litigation. Her continued presiding over foreclosure proceedings involving either property, and her scheduling of settlement conferences or hearings regarding the fraud on either property, constitutes an abuse of judicial power and a direct violation of due process and fiduciary

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

obligations. *(SEE EXHIBIT 15 - EMAIL CHAIN WITH DIVISION 25 CLERK REGARDING Scheduling October 7, 2026 Hearing)*

## K. Suppression of Plaintiffs' Petitions for Redress

103. On July 19, 2026, Plaintiffs filed a Notice of Bond Claim, Demand for Investigation, and Demand for Settlement with all parties, including Defendant KENNY HODGES (County Attorney), seeking good faith resolution of the fraudulent securitization scheme for BOTH PROPERTIES and unlawful foreclosures.

104. Said Notice of Bond Claim explicitly identified all fraudulent instruments, falsified party names, forged deeds, loan number discrepancies, securitization fraud, identity theft, and demanded investigation and settlement. *(SEE EXHIBIT 16.1 - Notice of Bond Claim)*

105. The Notice of Bond Claim was served upon all Defendants via registered mail with return receipt requested, establishing irrefutable proof of delivery and acceptance by each and every named Defendant. Specific service included: (1) El Paso County Attorney KENNY HODGES via registered mail tracking number RE070181741US with PS Form 3811 Green Card Tracking number 9590940214115329009526 received back signed; (2) El Paso County HR & Risk Management via registered mail tracking number RF830392188US with PS Form 3811 Green Card Tracking number 9590940214115329009519 received back signed; and (3) El Paso County Board of Commissioners (Commissioners BILL WYSONG, HOLLY WILLIAMS, CARRIE GEITNER, LAUREN NELSON, and CORY APPLEGATE) via registered mail tracking number RF830392191US with PS Form 3811 Green Card Tracking number 9590940214115329009502 received back signed. In addition to registered mail service, the Notice of Bond Claim was transmitted via email to all known county email addresses for each named Defendant, including: customerservice@auction.com; michaelallen@elpasoco.com; hr@elpasoco.com; mikeallen@elpasoco.com;

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

kennyhodges@elpasoco.com;charlesbroerman@elpasoco.com;  trsweb@elpasoco.com; chuckbroerman@elpasoco.com; comments@elpasopublictrustee.com.

106. This multi-method service (registered mail AND email) ensures that no Defendant can claim lack of actual notice or failure to receive the Bond Claim. The Defendants received explicit notice of the claims, the fraudulent instruments, the pattern of fraud affecting both properties, and the demand for investigation and settlement. *(SEE EXHIBIT 16.1 and 16.2 - Notice of Bond Claim with Proof of Service)*

107. Despite receipt of the Notice of Bond Claim and the comprehensive documentary evidence of fraud contained therein, Defendants KENNY HODGES, SHERI KING, STEVE SCHLEIKER, and all other named Defendants have provided NO RESPONSE WHATSOEVER to Plaintiffs' lawful petitions.

108. The deliberate suppression and denial of response to Plaintiffs' lawful petitions for redress constitutes a fundamental breach of equitable principles and natural law. Every living being possesses an inherent, inalienable right to petition those in authority for the correction of wrongs and the restoration of justice. This right does not derive from statutory grant or constitutional amendment; it flows from divine law and the natural order of justice itself. By receiving explicit notice of systematic fraud, forged documents, and unlawful foreclosure—and then deliberately refusing to respond, investigate, or provide any remedy—Defendants have violated the most basic equitable duty to hear grievances and act in good faith toward their resolution. This knowing suppression of Plaintiffs' petitions while remaining silent and inactive represents an abandonment of fiduciary responsibility and a fundamental denial of equitable relief that any court of conscience and natural justice is bound to provide.

109. This suppression of Plaintiffs' petitions also constitutes knowing and willful obstruction of justice under 18 U.S.C. § 1503, knowing and willful obstruction of federal judicial proceedings, and conspiracy to conceal federal crimes of securities fraud, mail fraud, wire fraud, money laundering, and RICO violations.

**COUNT I: VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT**

**ORGANIZATIONS ACT (RICO), 18 U.S.C. § 1961 ET SEQ.**

110. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

111. Defendants have constituted an "enterprise" as defined by 18 U.S.C. § 1961(4), consisting of a pattern of related conduct involving the Fourth Judicial District, El Paso County government agencies, county clerk and recorder offices, county treasurer offices, county attorney offices, public trustee offices, and private entities including Janeway Law Firm, P.C., Stewart Title Company (d/b/a Unified, A Division of Stewart), Mortgage Solutions of Colorado, LLC, MSF Servicing, MERSCORP HOLDINGS, LLC, U.S. Bank National Association, and FREDDIE MAC. This enterprise operates as a coordinated criminal organization designed to perpetrate systematic securitization fraud, forged and falsified documents, unlawful foreclosure, and deprivation of property rights.

112. This enterprise is engaged in activities affecting interstate commerce, including the securitization and trading of fraudulent mortgage-backed securities and Judicial Revenue Bonds, the manipulation of real property records across state lines, the transfer of debt across state lines (from Mortgage Solutions to Janeway in Colorado), the interstate coordination of foreclosure proceedings, the falsification of notary stamps and notary credentials, and the systematic deprivation of property rights through coordinated fraud involving government officials, private lenders, title companies, and law firms.

113. Defendants have conducted the affairs of this enterprise through a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5), involving at least two predicate acts within a ten-year period, including but not limited to:

**a. Mail Fraud (18 U.S.C. § 1341):** The mailing of falsified court documents, exemplified certificates bearing false party names ("STEFFANY HAMMER" instead of "STEFFANY HAMNER"), service envelopes with falsified party names, foreclosure notices with incorrect spellings designed to prevent service and notification, and IRS 1098 statements with false loan numbers (0820897205 instead of 256900R27), all through

the United States mail system with intent to defraud;

**b. Wire Fraud (18 U.S.C. § 1343):** The use of interstate wire communications and electronic systems to transmit fraudulent loan documents, securitization agreements, falsified real property records, QWR (Qualified Written Request) responses with false and inconsistent loan numbers, foreclosure notices with false party names, ICON reports with incorrect defendant identification, and email transmissions imposing unlawful pre-approval requirements to deny recording services;

**c. Securities Fraud (18 U.S.C. § 1348 and 15 U.S.C. § 77q, § 78j):** The fraudulent issuance, offer, and sale of securities in the form of Judicial Revenue Bonds (CUSIP G84920A10, face value $2,450,000.00) and mortgage-backed securities based upon forged deeds of trust, falsified borrower names, manipulated loan numbers (256900R27 vs. 0820897205 vs. Universal ID 549300PBTV7FCWLSMM53-256900R27-88), defective notary acknowledgments violating Colorado notary law, and fraudulently notarized instruments bearing forged notary stamps with invalid Colorado notary ID numbers (2015400003, which does not exist in Colorado Secretary of State database vs. authentic ID 20154002003);

**d. Notary Fraud and Forgery (Colorado felony under C.R.S. § 18-3-206 and violation of C.R.S. § 24-21-515):** The use of a forged or fraudulently altered notary stamp bearing invalid Colorado notary ID number 2015400003 on the Deed of Trust dated June 4, 2021, when the authentic notary ID for Debra Baker is 20154002003; the deliberate separation of the notary acknowledgment from the signature page in violation of Colorado notary security protocols requiring cross-referencing information (document title, page count, party names); and the creation of a fraudulently notarized instrument designed to appear authentic while containing deliberate defects enabling its fraudulent use and securitization;

**e. Money Laundering (18 U.S.C. § 1956):** The receipt and distribution of proceeds derived from the fraudulent securitization scheme through the Fourth Judicial District, El

Paso County accounts, FREDDIE MAC accounts, U.S. Bank trust accounts, and Janeway Law Firm accounts, thereby making the proceeds appear legitimate and concealing their fraudulent origin derived from forged documents, false notarizations, and unlawful foreclosures;

**f. Identity Theft (18 U.S.C. § 1028):** The use of Plaintiffs' names and identities without authorization to create fictitious parties, file fraudulent court proceedings and tax returns under false names ("STEFFANY HAMMER"), record fraudulent instruments, and create fraudulent financial instruments and securities;

**g. Aggravated Identity Theft (18 U.S.C. § 1028(c)):** The use of Plaintiffs' names and identities in connection with the commission of mail fraud, wire fraud, securities fraud, and notary fraud predicate acts, and the deliberate falsification of borrower identification across multiple documents to facilitate the entire securitization scheme;

**h. Computer Fraud (18 U.S.C. § 1030):** Unauthorized access to and manipulation of electronic recording systems to record fraudulent documents with false party names; misuse of official recording authority to file fraudulent deeds of trust and falsified notarizations; manipulation of electronic mortgage servicing systems to generate false loan account information and loan number discrepancies; and use of email systems to impose unlawful pre-approval requirements (Schleiker's email denial scheme) to obstruct federal court proceedings;

**i. Fraud Against the United States (18 U.S.C. § 1031):** The fraudulent use of federal court systems, federal recording systems, federal securities systems, and federal maritime law systems to perpetrate the securitization and foreclosure scheme;

**j. Tax Evasion and Tax Fraud (26 U.S.C. § 7206):** The fraudulent reporting of income, securitization proceeds, and collection amounts to the Internal Revenue Service through IRS 1098 statements with false loan numbers (0820897205 instead of 256900R27), thereby enabling tax evasion and concealing the fraudulent securitization income;

**k. Professional Negligence and Breach of Fiduciary Duty (common law):** Stewart Title Company's deliberate failure to detect or report obvious document defects (forged notary stamp with invalid ID, defective notary acknowledgment, loan number discrepancies) during the June 4, 2021 closing, enabling the fraudulent securitization by certifying the transaction as legitimate;

**l. Conspiracy (18 U.S.C. § 1962(d)):** An express or implied agreement and common course of conduct by all Defendants to commit the above predicate acts in furtherance of the enterprise, with knowledge of the enterprise's unlawful purpose and knowledge of one's own role in the enterprise, as evidenced by: (1) coordinated filing of fraudulent court documents using false party names; (2) coordinated recording of fraudulent and defectively notarized deeds; (3) coordinated provision of false loan information through QWR responses and IRS 1098 statements; (4) coordinated failure to respond to lawful petitions and Notice of Bond Claim; and (5) coordinated judicial approval of unlawful foreclosures despite actual notice of fraud.

114. Plaintiffs have been injured in their business or property by reason of Defendants' violations of 18 U.S.C. § 1962(c) and § 1962(d), as evidenced by: (a) the unlawful foreclosure of Plaintiffs' property at 10442 Beckham Street and threatened foreclosure of property at 519 Swope Avenue; (b) the fraudulent securitization of Plaintiffs' assets into Judicial Revenue Bonds generating $12,000,000-$47,000,000 annually in fraudulent investment income; (c) the deprivation of Plaintiffs' equity in the property through forged documents and false notarizations; (d) the loss of Plaintiffs' real property rights through systematic fraud perpetrated over years; (e) the systematic deprivation of Plaintiffs' constitutional and equitable rights through coordinated government and private defendant conduct; and (f) the creation of a permanent cloud on title through recording of fraudulent instruments bearing forged notary stamps and false party names.

115. The injury to Plaintiffs is directly and proximately caused by Defendants' RICO

enterprise and pattern of racketeering activity. Without the forged notary stamp (invalid ID 2015400003), the defective notary acknowledgment, the loan number discrepancies, the false party names in court filings, the notary fraud, and Stewart Title Company's failure to detect these defects, the entire securitization and foreclosure scheme would have been impossible. Each predicate act—mail fraud, wire fraud, securities fraud, notary fraud, computer fraud, identity theft, money laundering—directly enabled and facilitated the others, creating an integrated criminal enterprise designed to defraud Plaintiffs of their property.

116. Plaintiffs are entitled to recover treble damages under 18 U.S.C. § 1964(c), plus costs and attorney's fees, in the amount of Eight Hundred Ninety-Two Million, Three Hundred Fifty Thousand Dollars ($892,350,000.00), calculated as three times the base fraud damages of Two Hundred Ninety-Seven Million, Four Hundred Fifty Thousand Dollars ($297,450,000.00), representing disgorgement of fraudulent securitization profits and proceeds derived from the RICO enterprise.

## COUNT II: SECURITIES FRAUD UNDER 15 U.S.C. § 77Q AND § 78J

117. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

118. Defendants fraudulently issued, offered, sold, and traded securities in the form of mortgage-backed securities and Judicial Revenue Bonds (CUSIP G84920A10, face value $2,450,000.00) based upon the fraudulent securitization of Plaintiffs' property at 10442 Beckham Street, Peyton, Colorado [80831].

119. These securities were fraudulently created based upon forged deeds of trust, falsified borrower names, manipulated loan identification numbers, defective notary acknowledgments in violation of Colorado law, fraudulently notarized instruments bearing forged notary stamps with invalid Colorado notary ID numbers, and fraudulent loan documentation, with Defendants' actual knowledge that the underlying security instruments were forged, void, and obtained through systematic fraud.

120. The fraudulent notarization is a critical component of the securities fraud. The

Deed of Trust dated June 4, 2021, bears a notary acknowledgment purportedly executed by Debra Baker, a Colorado notary. The notary stamp on the Deed of Trust identifies Baker's notary ID as 2015400003. However, official verification through the Colorado Secretary of State website confirms that notary ID 2015400003 does not exist in the Colorado notary database. Baker's authentic registered notary ID is 20154002003. The deliberate use of a forged or fraudulently altered notary stamp bearing an invalid notary ID number renders the entire notarization void and the Deed of Trust fraudulently authenticated.

121. Additionally, the notary acknowledgment on page 11 of the Deed of Trust violates Colorado notary security protocols (C.R.S. § 24-21-515) by: (a) failing to identify the title or type of document; (b) failing to state the total number of pages; and (c) failing to include the names of the parties who signed. These required cross-referencing elements are mandatory security measures designed to prevent fraudulent detachment and re-attachment of notary certificates to different documents. The deliberate omission of this cross-referencing information, combined with the placement of the notary acknowledgment on a separate page from the signature page despite ample space to include it on page 10, demonstrates intentional violation of notary security protocols.

122. The loan number discrepancies further evidence securities fraud. The Deed of Trust identifies the loan as: (a) Loan Number 256900R27; and (b) Universal Loan ID 549300PBTV7FCWLSMM53-256900R27-88. However, MSF Servicing (the loan servicer) and the IRS Form 1098 mortgage interest statement identify a completely different loan number: 0820897205. This three-way loan number discrepancy indicates that Defendants deliberately manipulated loan documentation to obscure the true underlying collateral and borrower identification in the securitized instruments. Securities investors relied upon accurate loan identification to assess the creditworthiness and collateral value of the MBS; Defendants' manipulation of loan numbers constituted material misrepresentation to investors.

123. Defendants made material misrepresentations regarding: (a) the validity and authenticity of the underlying mortgage instruments (they were forged/falsely notarized); (b) the creditworthiness and legitimacy of the borrowers (Plaintiffs' identities were falsified as "STEFFANY HAMMER" in court filings); (c) the authenticity of all documentation supporting the securitization (notary stamps were forged, notarizations were defective); (d) the consistency and accuracy of loan identification numbers (three different numbers were used for the same loan); and (e) the proper execution and notarization of the Deed of Trust (the notary stamp bore an invalid ID number that does not exist).

124. Defendants made material omissions regarding: (a) the falsified borrower names in court filings and official documents; (b) the discrepancies between accurate loan identification numbers in the Deed of Trust and false numbers used by the servicer and IRS; (c) the deliberate backdating of forged instruments; (d) the fraudulent manipulation of loan documentation; (e) the defective notary acknowledgments lacking required cross-referencing information; (f) the use of forged or fraudulently altered notary stamps bearing invalid notary ID numbers; and (g) the systematic identity fraud affecting the borrowers' identification across all documents.

125. Defendants acted with scienter (intent to defraud, knowledge of falsity, or reckless disregard for the truth) in issuing fraudulent securities based upon known forged instruments, deliberately falsified documents, fraudulently notarized deeds bearing invalid notary stamps, and manipulated loan documentation. The evidence of scienter is overwhelming: (a) Defendants possessed accurate Deed of Trust with correct borrower names and loan numbers, yet filed fraudulent versions with false names and inconsistent loan numbers in court; (b) Defendants deliberately used a notary stamp bearing an invalid notary ID (2015400003) when the authentic ID is 20154002003; (c) Defendants deliberately violated Colorado notary security protocols by omitting cross-referencing information; (d) Defendants deliberately manipulated loan

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

numbers to create three different identifiers for the same loan; and (e) Defendants deliberately used false party names in court filings and service envelopes to prevent Plaintiffs from discovering the fraudulent proceedings.

126. Stewart Title Company's professional negligence in failing to detect these obvious document defects during the June 4, 2021 closing further evidences the deliberate nature of the securities fraud. Any competent title company conducting standard closing procedures would have immediately detected: (a) the forged notary stamp with invalid ID number; (b) the defective notary acknowledgment lacking required information; and (c) the loan number discrepancies. Stewart Title Company's failure to detect these obvious defects—despite having professional expertise and legal duty to do so—either demonstrates gross negligence enabling the fraud or knowing complicity in the securities fraud.

127. Plaintiffs, as beneficial owners of the property securing these fraudulent securities, have suffered injury and deprivation of their property rights, equitable interests, and constitutional protections. The fraudulent securitization directly caused: (a) the unlawful foreclosure proceedings against Plaintiffs' property; (b) the systematic deprivation of Plaintiffs' equity and property interests; (c) the creation of fraudulent financial instruments generating tens of millions of dollars in fraudulent investment income annually; and (d) the perpetuation of ongoing fraud against Plaintiffs.

128. Plaintiffs are entitled to: (a) rescission of the fraudulent securities; (b) disgorgement of all fraudulent profits and proceeds derived from the securitization; (c) compensatory damages for fraud; (d) punitive damages for knowing and willful securities fraud; (e) attorney's fees and costs; and (f) such other relief as this Court deems just and proper under 15 U.S.C. § 77q(b) and § 78j.

## COUNT III: CONSPIRACY TO COMMIT OFFENSES AGAINST THE UNITED STATES, 18 U.S.C. § 371

129. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

130. Defendants have conspired together to commit multiple offenses against the

United States, including but not limited to:

a. Fraud against the United States by fraudulently using federal court systems and federal recording systems to perpetrate the securitization and foreclosure scheme;

b. Mail fraud and wire fraud through interstate transmission of forged documents, fraudulently notarized deeds bearing invalid notary stamps, falsified court filings with incorrect party names ("STEFFANY HAMMER" vs. "STEFFANY HAMNER"), and fraudulent securitization instruments;

c. Securities fraud in violation of federal securities laws through issuance of fraudulent Judicial Revenue Bonds and mortgage-backed securities based upon forged instruments, falsified borrower names, manipulated loan numbers, and defective notarizations;

d. Notary fraud and forgery through the deliberate use of a forged or fraudulently altered notary stamp bearing invalid Colorado notary ID 2015400003 (which does not exist) to notarize critical financial instruments, combined with deliberate violation of Colorado notary security protocols;

e. Money laundering through the receipt and distribution of fraudulently obtained securitization proceeds through government and private defendant accounts;

f. Identity theft and aggravated identity theft through the systematic use of false party names in court filings, recorded instruments, and financial statements;

g. Computer fraud through unauthorized manipulation of electronic recording systems, mortgage servicing systems, and email systems to record fraudulent documents and impose unlawful requirements;

h. Tax evasion and tax fraud through the fraudulent reporting of income and securitization proceeds to the Internal Revenue Service via falsified IRS 1098

statements with incorrect loan numbers;

i. Obstruction of justice through the deliberate suppression of Plaintiffs' lawful petitions for redress, the refusal to respond to Notice of Bond Claim, and the concealment of federal crimes of securities fraud, mail fraud, wire fraud, and RICO violations;

j. Violations of federal maritime law supremacy (46 U.S.C. § 30908, § 30912) through the unlawful denial of recording services for federal priority lien documents;

k. Civil rights violations by knowingly and willfully depriving Plaintiff THOMAS PATRICK HAMNER of his constitutional rights under color of state law through coordinated government and private defendant action;

l. Conspiracy against rights under 42 U.S.C. § 1985 through the systematic deprivation of Plaintiffs' property rights, due process rights, and access to justice.

131. Defendants entered into an express or implied agreement to commit these offenses against the United States. The conspiracy is evidenced by the coordinated and systematic nature of the fraud across multiple defendants with different official roles and private positions, all working together toward the common objective of fraudulently securitizing Plaintiffs' property and unlawfully foreclosing upon it.

132. The conspiracy is demonstrated by: (a) Janeway Law Firm deliberately filing foreclosure case under false party name ("STEFFANY HAMMER") in coordination with court officials who accepted and processed the fraudulent caption; (b) Stewart Title Company failing to detect obvious document defects (forged notary stamp, defective notarization, loan number discrepancies) during closing, thereby certifying the fraudulent transaction as legitimate; (c) MSF Servicing providing false loan numbers (0820897205) that differ from the Deed of Trust (256900R27), facilitating loan number manipulation across documents; (d) Debra Baker using a forged or fraudulently altered notary stamp with invalid notary ID 2015400003, either knowingly or through negligent misuse of her

credentials; (e) Schleiker refusing to record federal priority lien documents through unlawful "email pre-approval" scheme, thereby protecting other Defendants from superior lien priority; (f) McPherson authorizing foreclosure sale despite actual notice of fraud and simultaneous status as defendant in related litigation; (g) Broerman recording fraudulent instruments and signing certificates of purchase despite notice of fraudulent scheme; (h) King certifying fraudulent court documents with known inconsistencies; and (i) All Defendants receiving Notice of Bond Claim with comprehensive evidence of fraud and systematically refusing to respond, investigate, or provide remedy.

133. Defendants knowingly and willfully participated in the conspiracy and took overt acts in furtherance of the conspiracy. Each Defendant's actions—whether filing false documents, failing to detect fraud, providing false information, refusing to respond to lawful petitions, or authorizing unlawful foreclosure—constituted knowing participation in the common objective of defrauding Plaintiffs and securitizing their property through forged documents and systematic fraud.

134. The conspiracy has resulted in injury to Plaintiffs through: (a) the unlawful foreclosure of their property at 10442 Beckham Street and threatened foreclosure of property at 519 Swope Avenue; (b) the fraudulent securitization of their assets into securities generating millions of dollars in fraudulent investment income; (c) the deprivation of their property rights through forged instruments and false notarizations; (d) the systematic deprivation of their constitutional and equitable rights; (e) the creation of permanent clouds on title through recording of fraudulent instruments; and (f) the ongoing threat of foreclosure despite clear evidence of fraud.

135. The conspiracy spans years, beginning with the June 4, 2021 execution of the fraudulently notarized Deed of Trust bearing the forged notary stamp, continuing through the 2021-2022 securitization period, and extending through the April-July 2026 fraudulent foreclosure proceedings. The conspiracy has been actively maintained and concealed through coordinated refusal to respond to Plaintiffs'

petitions, coordinated judicial approval of unlawful foreclosures, and coordinated obstruction of Plaintiffs' access to justice and due process.

136. Plaintiffs are entitled to equitable relief, restitution, and damages for violations of 18 U.S.C. § 371, including disgorgement of fraudulent securitization proceeds, restoration of property rights, rescission of fraudulent foreclosure orders, and punitive damages for the knowing and willful conspiracy to commit offenses against the United States.

## COUNT IV: CIVIL RIGHTS CONSPIRACY UNDER 42 U.S.C. § 1983

137. Plaintiff THOMAS PATRICK HAMNER, by and through his Attorney-in-Fact steffany-rose: oakland©™, incorporates all preceding allegations as if fully set forth herein.

138. Defendant THOMAS PATRICK HAMNER is a natural person operating in public capacity and subject to deprivation of his constitutional rights by state actors under color of state law. Defendants, acting under color of state law and federal authority, have knowingly and willfully conspired to deprive THOMAS PATRICK HAMNER of rights, privileges, and immunities secured by the Constitution of the United States, including:

a. The right to own property and be secure in that ownership (Fifth Amendment Taking Clause, Fourteenth Amendment Due Process Clause);

b. The right to due process of law before deprivation of property (Fifth and Fourteenth Amendments);

c. The right to petition the government for redress of grievances through lawful filing of bond claims and demands for investigation (First Amendment, Fourteenth Amendment);

d. The right to a fair and impartial trial before an unbiased judge free from conflicts of interest (Sixth and Fourteenth Amendments);

e. The right to equal protection under law (Fourteenth Amendment);

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

f. The right to accurate legal process and accurate identification in court proceedings (Fourteenth Amendment Due Process);

g. The right to access federal courts and federal jurisdiction for resolution of federal questions and diversity claims (federal question jurisdiction and diversity jurisdiction rights);

h. The right to have one's recorded property interests respected and protected by state officials (Fourteenth Amendment Due Process).

139. Plaintiff THOMAS PATRICK HAMNER has been deprived of these fundamental constitutional rights through Defendants' coordinated and systematic conduct, including: (a) fraudulent securitization scheme using forged instruments and falsified notarizations; (b) false party name identification in court filings ("STEFFANY HAMMER" instead of "STEFFANY HAMNER") designed to prevent service and notification; (c) defective service of process using incorrect party names; (d) forged notary stamps bearing invalid notary ID numbers (2015400003 vs. authentic 20154002003); (e) defective notary acknowledgments violating Colorado security protocols; (f) loan number manipulation (three different numbers for same loan); (g) falsified court documents with known inconsistencies; (h) judicial authorization of foreclosure by judge with manifest conflict of interest (McPherson as simultaneous defendant in related litigation); (i) unlawful denial of recording services to prevent federal priority lien perfection (Schleiker); (j) refusal to respond to lawful petitions for redress despite actual notice of fraud (Notice of Bond Claim); and (k) suppression of Plaintiffs' access to justice and due process.

140. State actors KELLY JUNE MCPHERSON (District Judge), STEVE SCHLEIKER (County Clerk and Recorder), KENNY HODGES (County Attorney), SHERI KING (Clerk of Court), CHARLES BROERMAN (County Treasurer and Public Trustee), and members of the BOARD OF COMMISSIONERS acted under color of state

law in their official capacities as government officials exercising delegated state authority.

141. Private defendants JANEWAY LAW FIRM, P.C., LYNN M. JANEWAY, DAVID R. DOUGHTY, ALISON L. BERRY, STEWART TITLE COMPANY, MORTGAGE SOLUTIONS OF COLORADO, LLC, MSF SERVICING, DEBRA BAKER, MERSCORP HOLDINGS, LLC, JEFFREY TRUSHEIM, FREDDIE MAC, and U.S. BANK NATIONAL ASSOCIATION are liable under 42 U.S.C. § 1983 because they acted in concert with state actors under color of state law. The Supreme Court has recognized that private parties can be held liable under § 1983 when they act in concert with state officials or when they exercise functions traditionally performed by the state. Here, private defendants conspired with and facilitated state actors' deprivation of Plaintiff's constitutional rights by: (a) providing forged documents to state officials for recording; (b) filing false party names in state court proceedings; (c) failing to detect fraudulent documents during closing (Stewart Title); (d) providing false loan information to servicers and IRS; (e) using forged notary stamps; and (f) coordinating with state officials to suppress Plaintiffs' petitions and authorize unlawful foreclosure.

142. The conspiracy among all Defendants is evidenced by their coordinated actions in furtherance of the common objective of defrauding Plaintiffs and foreclosing upon their property through forged instruments, falsified notarizations, false party names, and systematic suppression of Plaintiffs' access to justice.

143. Plaintiff THOMAS PATRICK HAMNER has suffered concrete injury through deprivation of his property rights, loss of equity in the property, denial of due process before deprivation of property, inability to respond to fraudulent foreclosure due to defective service based on false party names, denial of access to federal courts through unlawful obstruction of federal priority lien recording, and suppression of his lawful petitions for redress.

144. The deprivation of Plaintiff's constitutional rights was done knowingly and willfully by Defendants acting under color of state law (state actors) and in

concert with state actors (private defendants). The evidence of knowing and willful conduct is overwhelming: (a) possession of accurate documents yet deliberate use of false names in court filings; (b) use of forged notary stamps when authentic notary credentials were available; (c) receipt of Notice of Bond Claim with comprehensive evidence of fraud, followed by systematic refusal to respond; (d) McPherson's simultaneous status as defendant in related litigation while authorizing foreclosure; (e) Schleiker's stated reason for refusing recording services being Schleiker's status as defendant in the same litigation; and (f) coordination across multiple defendants with different roles all working toward common objective of defrauding Plaintiffs.

145. Plaintiff THOMAS PATRICK HAMNER is entitled to: (a) declaratory judgment that Defendants' actions violated his constitutional rights; (b) injunctive relief permanently restraining Defendants from further deprivation of his property rights and constitutional protections; (c) compensatory damages for deprivation of property rights ($50,000,000); (d) compensatory damages for denial of petition for redress ($25,000,000); (e) compensatory damages for denial of impartial judge ($15,000,000); (f) compensatory damages for denial of accurate legal process and identification ($10,000,000); (g) punitive damages for knowing and willful deprivation of constitutional rights; (h) attorney's fees and costs; and (i) such other relief as this Court deems just and proper under 42 U.S.C. § 1983.

## COUNT V: VIOLATION OF FEDERAL MARITIME LAW SUPREMACY – 46 U.S.C. § 30908 AND § 30912

146. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

147. On October 17, 2025, Plaintiffs perfected a superior federal secured party priority lien on the subject property at 10442 Beckham Street, Peyton, Colorado [80831], under 46 U.S.C. § 30908 (Vessel Supremacy Doctrine & Exemption Doctrine) and 46 U.S.C. § 30912 (Priority Doctrine), which established absolute priority of Plaintiffs' secured creditor status over all other liens, claims, and

   MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

encumbrances on the subject property. This priority lien is a federal lien arising under federal law and is subject exclusively to federal law supremacy principles, not state law or state court jurisdiction.

148. Federal maritime law supremacy doctrine (46 U.S.C. § 30908) establishes that federal priority liens have superior status to all other liens and cannot be subordinated to state court claims, state lien priorities, or state statutory procedures. This type of lien is supreme over state law and state court orders. This doctrine ensures that federal interests are protected regardless of conflicting state law claims.

149. Federal maritime law priority doctrine (46 U.S.C. § 30912) establishes that federal priority liens have absolute priority over all other liens, including subsequent mortgages, judgment liens, tax liens, and any other claims whatsoever. Federal priority liens must be respected, recorded, and enforced by state officials without interference, delay, or obstruction by state actors.

150. Defendant STEVE SCHLEIKER, El Paso County Clerk and Recorder, is a state official with ministerial duties under Colorado Recording Act (C.R.S. § 30-10-406) to record all documents meeting statutory filing requirements. Most critically, SCHLEIKER RECORDED IDENTICAL DOCUMENTS for the related property at 519 Swope Avenue, Colorado, including: (a) a complete Revocation of All Delegated Power of Attorney and Rescission of Signature revoking powers away from all county officials, trustees, substitute trustees, and other government actors for breaching fiduciary duties; and (b) a full discharge packet including allonges and secured party liens. By recording these identical revocation and discharge documents for the 519 Swope Avenue property, Schleiker conclusively established that such documents are valid, recordable, and meet all statutory filing requirements under Colorado law. Complete documentation of these estoppel-creating recordings and all related federal filings has been documented under seal *(SEE EXHIBIT 12 - FILED UNDER SEAL)*

151. Days after recording the identical revocation and discharge documents for the

519 Swope Avenue property, Plaintiffs submitted the EXACT SAME DOCUMENTS for recording on the related property at 10442 Beckham Street, Peyton, Colorado [80831]. These documents were identical in form, content, and legal effect to those Schleiker had just accepted and recorded for the Swope Avenue property. However, Schleiker REPEATEDLY AND DELIBERATELY REFUSED TO RECORD these identical documents for the Beckham Street property, despite Plaintiffs explicitly pointing out that Schleiker's prior acceptance and recording of identical documents for the Swope Avenue property created estoppel by prior acceptance. Detailed documentation of this refusal pattern and all communications regarding the attempt to record these federal priority documents has been filed under seal with this Court *(SEE EXHIBIT 12 - FILED UNDER SEAL; EXHIBIT 13 - Email Chain with Schleiker and Hodges).*

152. Schleiker's selective recording—accepting identical documents for one property while refusing identical documents for another property—constitutes systematic discrimination, arbitrary and capricious administrative action, and deliberate violation of the Colorado Recording Act's requirement that all documents meeting statutory requirements be recorded uniformly. Schleiker cannot legally or equitably accept and record identical documents for one property while refusing to record identical documents for another property without citing a specific statutory or regulatory reason for the differential treatment. Schleiker's refusal to provide any statutory basis for the differential treatment, combined with his prior recording of the identical documents for Swope Avenue, establishes clear estoppel by prior acceptance.

153. That fact that Schleiker RECORDED Plaintiffs' federal priority lien on the Swope Avenue property, thereby accepting federal jurisdiction over the lien, acknowledges the validity of federal priority liens, which equates to agreement to respect federal maritime law supremacy and Plaintiffs' rights to record such federal instruments.

154. By recording the federal priority lien Schleiker established conclusively that: (a)

Plaintiffs have standing to file federal priority liens and revocation documents in Colorado; (b) Plaintiffs' liens and revocation instruments are valid and enforceable under federal law and Colorado law; (c) Schleiker has authority and obligation to record such documents; (d) Schleiker accepted that federal law supremacy and Colorado Recording Act uniformity requirements govern such documents; and (e) identical documents meeting statutory requirements must be recorded without discrimination or arbitrary refusal based on which property is involved.

155. Schleiker's refusal was based on an unlawful "email pre-approval" requirement that is NOT mandated by Colorado law, federal law, or any other legal authority. Schleiker demanded that Plaintiffs obtain "email pre-approval" from county legal counsel or other officials before Schleiker would record the federal priority lien documents—a requirement that has no basis in Colorado Recording Act, federal maritime law, or any statute.

156. Schleiker indefinitely delayed the recording for 60+ days without issuing a formal statutory denial (C.R.S. § 30-10-403) as required by Colorado law. Instead, Schleiker simply ignored requests and demands for recording, thereby obstructing federal law and preventing Plaintiffs from perfecting their federal rights.

157. Schleiker's unlawful denial is a direct violation of federal maritime law supremacy. By refusing to record documents enforcing Plaintiffs' federal priority lien, Schleiker violated: (a) 46 U.S.C. § 30908, which requires that federal priority liens be recorded without obstruction; (b) 46 U.S.C. § 30912, which requires that federal priority liens have absolute priority and be enforced; (c) the principle of federal question jurisdiction, which gives federal courts power to hear cases arising under federal law.

158. Schleiker's conduct constitutes:

a. Violation of federal maritime law supremacy (46 U.S.C. § 30908, § 30912);

b. Violation of the Supremacy Clause of the U.S. Constitution (Article VI, Clause 2);

c. Obstruction of federal court proceedings by preventing perfection of federal rights;

d. Interference with federal diversity jurisdiction perfection;

e. Ministerial duty violation under Colorado Recording Act (C.R.S. § 30-10-406);

f. Computer fraud through unlawful use of email approval systems to deny federal recording services;

g. Official misconduct under C.R.S. § 18-8-404;

h. Abuse of administrative process;

i. Violation of due process rights;

j. Conflict of interest while serving as a named defendant;

k. Conspiracy with other Defendants to obstruct federal law and prevent Plaintiffs from perfecting federal rights.

159. Schleiker's unlawful denial directly violates the principle of federal supremacy. States cannot obstruct, delay, or condition the recording of lawful filings and/or federal liens. Federal law must be respected and enforced by state officials regardless of whether state officials have conflicting interests. By refusing to record documents enforcing federal priority liens, Schleiker placed his personal interest as a defendant above his obligation to respect federal law—a fundamental violation of the Supremacy Clause.

160. The impact of Schleiker's violation is material and concrete. By refusing to record Plaintiffs' priority lien documents, Schleiker prevented Plaintiffs from: (a) perfecting their superior secured creditor status in federal court; (b) establishing their absolute priority over foreclosing lienholders; (c) preventing unlawful

foreclosure based upon subordinate liens; and (d) using the recorded priority lien as evidence of their superior claim in this federal action and other proceedings.

161. Furthermore, Schleiker's indefinite delay (60+ days) and ultimate refusal to record violates Plaintiffs' rights by preventing Plaintiffs from perfecting their secured creditor status and superior lien position. Plaintiffs cannot access federal courts or establish federal diversity jurisdiction without perfection of their federal priority liens. Schleiker's obstruction denies Plaintiffs access to federal justice.

162. Plaintiffs are entitled to: (a) an immediate order from this Court compelling Schleiker to record all previously requested documents without conditions, delay, or obstruction; (b) a declaratory judgment stating that federal priority lien documents are valid, enforceable, and must be recorded under federal law; (c) a declaratory judgment establishing Plaintiffs' absolute priority over all other liens and claims; (d) damages against Schleiker for violation of federal law; (e) punitive damages for knowing and willful obstruction of federal law; (f) attorney's fees and costs; and (g) such other relief as this Court deems appropriate to vindicate federal maritime law supremacy and the Supremacy Clause.

## COUNT VI: JUDICIAL MISCONDUCT AND CONFLICT OF INTEREST

163. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

164. Defendant KELLY JUNE MCPHERSON, serving as District Court Judge for the Fourth Judicial District, El Paso County, Colorado, has committed systematic judicial misconduct and violated fundamental fiduciary duties owed to Plaintiffs through her actions in presiding over foreclosure proceedings while simultaneously being a named defendant in related federal litigation arising from identical patterns of fraud affecting the same Plaintiffs and their properties.

165. On or about July 27, 2026, McPherson authorized the unlawful foreclosure sale of Plaintiffs' property at 10442 Beckham Street through her "Order Approving Sale," despite having received: (a) explicit notice of Plaintiffs' fraud claims; (b) comprehensive evidence of securitization fraud; (c) documentary evidence of

forged notary stamps, defective notarizations, and falsified party names; (d) a Notice of Bond Claim identifying systematic fraud affecting both the Beckham Street and 519 Swope Avenue properties; and (e) actual knowledge that McPherson herself was a named defendant in related federal action arising from the identical fraudulent securitization scheme.

166. McPherson issued an order compelling all parties to contact Plaintiffs in good faith to conduct a settlement conference, *thereby acknowledging receipt of Plaintiffs' evidence and implicitly acknowledging the validity and seriousness of Plaintiffs' fraud claims*. (SEE EXHIBIT AC - Order Compelling Settlement Conference) Yet despite this acknowledgment, McPherson proceeded to authorize the foreclosure sale through her Order Approving Sale on July 27, 2026, thereby authorizing the deprivation of Plaintiffs' property while simultaneously remaining a named defendant in litigation asserting that the very property at issue was obtained through fraud.

167. McPherson's simultaneous status as a named defendant in the United States District Court for the District of Massachusetts, and now this COLORADO litigation casse, while presiding over foreclosure proceedings affecting the same Plaintiffs and the same properties constitutes a manifest and untenable conflict of interest that violates: (a) her judicial oath; (b) Colorado Rules of Professional Conduct governing judicial impartiality; (c) the Due Process Clause of the Fifth and Fourteenth Amendments; (d) fiduciary duties owed to litigants; and (e) basic principles of equity and natural justice.

168. McPherson cannot simultaneously defend herself as a defendant in federal litigation asserting that Plaintiffs' property was obtained through fraud, while also presiding as judge over Colorado state court proceedings authorizing the foreclosure and removal of that same property. This creates an insurmountable conflict between: (a) McPherson's interest in defending herself as a defendant by authorizing foreclosure (removing evidence and witnesses); and (b) McPherson's duty to administer justice impartially and fairly to both parties.

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

169. Most egregiously, McPherson scheduled an October 7, 2026 hearing in the state court foreclosure proceeding on the related 519 Swope Avenue property and attempted to order a settlement conference in which she would directly oversee settlement negotiations regarding the proven fraud on that same property. McPherson cannot simultaneously serve as: (a) a named defendant in federal litigation addressing the fraudulent securitization and forged documents on both properties; (b) the presiding judge ordering settlement conferences and conducting hearings on those same properties; and (c) the judicial officer negotiating or approving any settlement of claims that directly implicate her own misconduct and liability as a defendant.

170. By attempting to preside over settlement negotiations on matters in which she is a named defendant, McPherson was attempting to use her judicial authority to control and manipulate the settlement process regarding claims that directly implicate her own liability. This is a fundamental abuse of judicial power and a direct violation of fiduciary duty to Plaintiffs. McPherson cannot "have her cake and eat it too" by appearing as a defendant in litigation while simultaneously wielding judicial authority over the very matters that are the subject of that litigation.

171. McPherson's authorization of the foreclosure sale while serving as a named defendant in related federal litigation is not merely a "conflict of interest"—it is judicial misconduct, abuse of power, and violation of due process. Her continued presiding over foreclosure proceedings involving either property, and her scheduling of settlement conferences or hearings regarding the fraud on either property, constitutes an abuse of judicial power and a direct violation of due process and fiduciary obligations.

172. McPherson's Order Approving Sale dated July 27, 2026 is void ab initio because it was issued by a judge with manifest conflict of interest while presiding over matters in which she is a named defendant. The order is legally void and unenforceable. No foreclosure sale can be valid when authorized by a conflicted

judge who is simultaneously a defendant in related litigation asserting that the property was obtained through fraud.

173. McPherson's conduct violates the fundamental principle that no person can be a judge in their own case. By presiding over foreclosure proceedings while being sued for fraud arising from the same securitization scheme, McPherson has violated this foundational principle of justice and equity.

174. Plaintiffs are entitled to: (a) a declaratory judgment that McPherson's Order Approving Sale is void ab initio due to manifest conflict of interest; (b) an order rescinding and invalidating the July 27, 2026 foreclosure sale authorization; (c) an order permanently disqualifying McPherson from presiding over any proceedings involving Plaintiffs or their properties; (d) an order disqualifying all El Paso County judicial officers from presiding over Plaintiffs' cases due to systemic conflicts of interest and institutional bias; (e) damages against McPherson for judicial misconduct; (f) punitive damages for knowing and willful abuse of judicial power; (g) attorney's fees and costs; and (h) such other relief as this Court deems just and proper.

## COUNT VII: VIOLATION OF COLORADO RECORDING ACT – C.R.S. § 30-10-406

175. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

176. The Colorado Recording Act (C.R.S. § 30-10-406) establishes that the county clerk and recorder has a non-discretionary ministerial duty to record all documents that meet statutory filing requirements. The statute creates an absolute obligation with no discretion. The county clerk must record documents; the clerk cannot refuse to record documents based on personal preference, administrative convenience, conflict of interest, or any reason not explicitly authorized by Colorado statute.

177. Defendant STEVE SCHLEIKER, El Paso County Clerk and Recorder, holds this ministerial office and has legal obligation to record all documents meeting statutory requirements without delay, without conditions, and without imposing unlawful prerequisites.

178. Plaintiffs submitted documents for recording that met all statutory requirements under Colorado Recording Act, including: (a) Revocation of All Delegated Power of Attorney and Rescission of Signature; (b) Discharge packets; (c) Allonges; (d) Secured party liens; (e) Federal priority lien documents; and (f) other instruments perfecting Plaintiffs' superior secured creditor status and priority lien position.

179. Schleiker's conduct demonstrates clear violation of C.R.S. § 30-10-406 through multiple mechanisms:

a. **Selective Recording (Arbitrary and Capricious):** Schleiker recorded identical Revocation of Power of Attorney and discharge documents for the 519 Swope Avenue property, thereby accepting and recording such documents. Days later, when Plaintiffs submitted the identical documents for the 10442 Beckham Street property, Schleiker REFUSED to record them. There is no statutory, regulatory, or legal basis for recording identical documents for one property while refusing identical documents for another property. This selective recording is arbitrary, capricious, and violates the Colorado Recording Act's requirement of uniform treatment of all documents meeting statutory requirements.

b. **Unlawful Conditions:** Schleiker imposed an unlawful "email pre-approval" requirement that is NOT mandated by Colorado Recording Act, Colorado administrative regulations, or any other legal authority. C.R.S. § 30-10-406 contains no provision authorizing the county clerk to require "email pre-approval" from county legal counsel or any other official before recording documents. Schleiker's imposition of this unlawful condition violated the ministerial nature of the recording duty and constituted an unlawful obstruction of Plaintiffs' right to record documents.

c. **Indefinite Delay:** Schleiker indefinitely delayed the recording of Plaintiffs' documents for 60+ days without issuing a formal statutory denial as required by C.R.S. § 30-10-403. Colorado law requires that if a county clerk refuses to record a document, the clerk must issue a written denial within five business days stating the specific statutory or regulatory reason for refusal. Schleiker never issued any such denial; Schleiker simply

ignored requests and demands for recording.

d. **Estoppel by Prior Acceptance:** By recording identical documents for the 519 Swope Avenue property, Schleiker created an estoppel preventing him from later refusing to record identical documents for the Beckham Street property. Estoppel by prior acceptance is a fundamental doctrine in administrative law: when a government official accepts and records one document, that official is estopped from later refusing to record an identical document without citing specific statutory or regulatory grounds for the differential treatment. Schleiker's inability or unwillingness to cite any statutory basis for refusing the identical Beckham Street documents confirms that the refusal violated C.R.S. § 30-10-406.

180. Schleiker's violations of C.R.S. § 30-10-406 are further compounded by his simultaneous status as a NAMED DEFENDANT in this federal litigation. Schleiker's conflict of interest motivated his refusal to record documents that would perfect Plaintiffs' superior secured creditor status and priority lien position—status that would subordinate Schleiker's own liability and expose his role in the fraud scheme. Schleiker used his ministerial office as a tool to protect himself from legal consequences, thereby converting his official position into a personal shield against accountability.

181. Schleiker's 60+ day delay without statutory denial also violates C.R.S. § 30-10-403, which establishes the statutory procedure for refusing to record documents. If Schleiker had legitimate grounds to refuse recording, C.R.S. § 30-10-403 required him to issue a written denial within five business days. Schleiker's failure to issue any denial, combined with his later acceptance of identical documents for different properties, confirms that Schleiker had no legitimate statutory grounds for refusing to record and was instead engaging in arbitrary and capricious conduct motivated by his conflict of interest.

182. Schleiker's violations of the Colorado Recording Act have directly harmed Plaintiffs by: (a) preventing perfection of Plaintiffs' superior secured creditor

status; (b) obstructing Plaintiffs' access to federal diversity jurisdiction; (c) preventing Plaintiffs from recording federal priority lien documents; (d) enabling other Defendants to proceed with unlawful foreclosure based on subordinate liens; and (e) denying Plaintiffs the ability to use recorded priority liens as evidence in this federal action.

183. Furthermore, Schleiker's unlawful recording denial violates federal maritime law supremacy (46 U.S.C. § 30908, § 30912), which requires that federal priority liens be recorded without obstruction or delay. States cannot impose unlawful conditions or refuse to record federal instruments. Schleiker's refusal to record federal priority lien documents violates the Supremacy Clause of the U.S. Constitution and federal maritime law.

184. Plaintiffs are entitled to: (a) an immediate order from this Court compelling Schleiker to record all documents submitted for recording that meet statutory filing requirements, including the Revocation of Power of Attorney, discharge packets, allonges, secured party liens, and federal priority lien documents; and NOTICE OF LIS PENDENS (b) a declaratory judgment that Schleiker's prior refusals to record violated C.R.S. § 30-10-406 and C.R.S. § 30-10-403; (c) a declaratory judgment establishing that identical documents recorded for the 519 Swope Avenue property created estoppel preventing refusal to record identical documents for the Beckham Street property; (d) damages against Schleiker for violation of the Colorado Recording Act; (e) punitive damages for knowing and willful obstruction of recording services; (f) attorney's fees and costs; and (g) such other relief as this Court deems appropriate to enforce Plaintiffs' right to record documents and establish their superior secured creditor status.

## COUNT IX: VIOLATIONS OF COLORADO NOTARY LAW – C.R.S. § 24-21-515

202. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

203. The Colorado Revised Uniform Law on Notarial Acts (C.R.S. § 24-21-515, et seq.) establishes mandatory requirements for notary acknowledgments and notarizations. These requirements are not discretionary; they are mandatory

security protocols designed to prevent fraud, forgery, and misuse of notary credentials.

204. C.R.S. § 24-21-515 requires that all notary acknowledgments, particularly those appearing on separate pages from the document being notarized, must include specific cross-referencing information to establish the connection between the notary certificate and the principal document. These mandatory elements include: (a) the title or type of document being notarized; (b) the date of the document; (c) the total number of pages of the document; and (d) the names of the signatories who appeared before the notary.

205. The Deed of Trust dated June 4, 2021, with notary acknowledgment on page 11, violates C.R.S. § 24-21-515 in multiple respects:

a. **Missing Document Title:** The notary page does not identify the document as a "Deed of Trust" or provide any description of the type of document being notarized. A person reviewing only the notary certificate would have no way of knowing what document the notary acknowledged.

b. **Missing Page Count:** The notary page does not state the total number of pages in the Deed of Trust. The notary does not indicate "this document consists of [X] pages" or provide any page count information. This omission violates the mandatory requirement to cross-reference the principal document.

c. **Missing Party Names:** The notary page does not identify Plaintiffs by name. It does not state "THOMAS HAMNER and STEFFANY HAMNER appeared before me" or provide any party identification. This is a critical security requirement designed to prevent a notary certificate from being fraudulently attached to different documents with different parties.

d. **No Secure Attachment Evidence:** There is no indication that the notary certificate on page 11 is securely attached to the principal document. There are no staple marks, binding evidence, or other physical evidence of attachment. The notary page could be

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

fraudulently detached and reattached to different documents.

e. **Separation Without Cross-Referencing:** The notary acknowledgment is placed on a physically separate page (page 11) from the signature page (page 10), yet there is no cross-referencing language tying the notary certificate to the Deed of Trust. Colorado notary law requires that when separate certificates are used, explicit cross-referencing language must appear on both the certificate and the principal document to prevent fraud.

206. These violations of C.R.S. § 24-21-515 are not technical or minor defects. They are fundamental security protocols designed specifically to prevent the fraudulent use of notary certificates. The Colorado Department of Education Notary Handbook and the National Notary Association (NNA) explicitly mandate these cross-referencing requirements.

207. The deliberate omission of document title, page count, and party names was not accidental. There was ample space on page 10 of the Deed of Trust (the signature page) to include a complete notary acknowledgment with all required cross-referencing information directly under the signatures. Instead, the notary acknowledgment was deliberately placed on a separate page 11 without the required identifying information—a deliberate choice that violates Colorado notary law and creates the conditions for fraud.

208. The notary acknowledgment defects violate C.R.S. § 24-21-515's core mandate: to ensure that notary certificates are securely attached to specific documents and cannot be fraudulently transferred between documents. By omitting cross-referencing information and placing the certificate on a separate page, the notary violated this core mandate.

209. Defendant DEBRA BAKER, as the notary who allegedly executed this defective notary acknowledgment, is liable for violation of C.R.S. § 24-21-515 through: (a) knowingly executing a notary acknowledgment that lacks required cross-referencing information; (b) knowingly placing the notary acknowledgment on a

 MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

separate page without establishing secure attachment; (c) knowingly omitting the document title, page count, and party names from the certificate; or (d) negligently failing to comply with mandatory notary law requirements.

210. Additionally, all Defendants who accepted, recorded, relied upon, or benefited from the defective notary acknowledgment are liable for violating C.R.S. § 24-21-515 through complicity or constructive knowledge. Specifically:

a. **Stewart Title Company** violated C.R.S. § 24-21-515 by accepting and facilitating the closing of a transaction based upon a defective notary acknowledgment that violated Colorado notary security protocols. As a professional title company with expertise in notary compliance, Stewart Title had a duty to detect and refuse to close based upon the defective notarization.

b. **Mortgage Solutions of Colorado and MSF Servicing** violated C.R.S. § 24-21-515 by accepting the defectively notarized deed as security for the loan, thereby facilitating the use of an instrument that violates Colorado notary law.

c. **Janeway Law Firm** violated C.R.S. § 24-21-515 by using the defectively notarized deed as the basis for foreclosure proceedings, thereby enforcing an instrument that violates Colorado notary law.

d. **El Paso County Clerk Schleiker** violated C.R.S. § 24-21-515 by recording an instrument that contains a notary acknowledgment violating Colorado notary security protocols. The county clerk has a duty to identify defective notary acknowledgments and refuse to record instruments with defects that violate state notary law.

e. **FREDDIE MAC and U.S. Bank** violated C.R.S. § 24-21-515 by purchasing and securitizing an instrument containing a defective notary acknowledgment that violates Colorado notary law.

f. **All Defendants** who were aware of these facts or negligent in their duties violated Colorado law and proceeded with the securitization, foreclosure, or enforcement of the

defectively notarized deed violated C.R.S. § 24-21-515.

211. The violation of C.R.S. § 24-21-515 is compounded by the fact that the notary stamp itself bears an invalid notary ID number (2015400003), which does not exist in the Colorado Secretary of State database. A notary who violates the cross-referencing requirements of § 24-21-515 AND uses an invalid or forged notary stamp has committed systematic, multi-layered violations of Colorado notary law.

212. The consequence of violating C.R.S. § 24-21-515 is that the notary acknowledgment is void and legally ineffective. A notary acknowledgment that violates the mandatory cross-referencing requirements is not a valid notarization and cannot serve as the basis for recording a deed, securitizing a loan, or enforcing any instrument.

213. C.R.S. § 24-21-515 contains no express private right of action, but violations of this statute constitute: (a) breaches of fiduciary duty by notaries and other professionals (Stewart Title, lenders, law firms); (b) fraud and misrepresentation (use of defective notarization to appear legitimate); (c) basis for rescission of instruments (defectively notarized deeds are void); and (d) basis for civil claims under common law fraud and breach of duty theories.

214. Plaintiffs are entitled to: (a) a declaratory judgment that the notary acknowledgment on the Deed of Trust violates C.R.S. § 24-21-515 and is void and legally ineffective; (b) a declaratory judgment that the Deed of Trust cannot be enforced or used as basis for foreclosure due to the defective notarization; (c) a declaratory judgment that all securitization instruments based upon the defectively notarized deed are void and unenforceable; (d) damages against Debra Baker for violation of C.R.S. § 24-21-515; (e) damages against all Defendants who accepted, recorded, or enforced the defectively notarized deed; (f) punitive damages for knowing and willful violations of Colorado notary law; (g) rescission of all foreclosure proceedings and orders based upon the defectively notarized deed; (h) restitution of all amounts collected through foreclosure based

upon the defectively notarized deed; (i) criminal referral to the Colorado Attorney General for investigation of violations of C.R.S. § 24-21-515; (j) attorney's fees and costs; and (k) such other relief as this Court deems just and proper.

## COUNT XI: BREACH OF PROFESSIONAL DUTY AND NEGLIGENCE – STEWART TITLE COMPANY

231. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

232. Defendant STEWART TITLE COMPANY, a Foreign Corporation incorporated in Texas, operating under the trade name "UNIFIED, A DIVISION OF STEWART," serves as an escrow agent and closing agent in real estate transactions. Stewart Title Company owes professional and legal duties to all parties in a real estate closing transaction, including borrowers/buyers and their lenders.

233. As an escrow agent and closing agent, Stewart Title Company has explicit professional and legal duties under Colorado law and industry standards, including: (a) to conduct a thorough examination of all documents before closing; (b) to verify the authenticity and validity of all documents, including security instruments and notary acknowledgments; (c) to identify and flag any irregularities, defects, or red flags in loan documents or security instruments; (d) to verify that notary stamps and notary IDs comply with Colorado notary law; (e) to identify and flag any inconsistencies in party names across documents; (f) to verify that loan identification numbers are consistent across all closing documents; (g) to conduct or verify a title search to identify any defects in title or prior liens; (h) to refuse to close and disburse funds if documents are defective, fraudulently notarized, or bear signs of forgery or tampering; and (i) to exercise reasonable care and competence in performing escrow and closing services.

234. On June 4, 2021, Stewart Title Company served as the escrow agent and closing agent for Plaintiffs' mortgage transaction. Plaintiffs met with representatives of Stewart Title Company at their office in downtown Colorado Springs to finalize the closing. Plaintiffs relied on Stewart Title Company's professional representation that the transaction was properly documented,

authenticated, and ready to close.

235. At the time of closing on June 4, 2021, Stewart Title Company had access to and was presented with the Deed of Trust that would be recorded (Reception No. 221109471). This Deed of Trust contained all necessary information for Stewart Title Company to perform a competent escrow examination, including: (a) the correct borrower names (THOMAS HAMNER and STEFFANY HAMNER); (b) the loan number (256900R27); (c) the universal loan ID (549300PBTV7FCWLSMM53-256900R27-88); (d) the notary acknowledgment on page 11; and (e) the notary stamp bearing notary ID 2015400003.

236. During the closing process, Stewart Title Company had professional obligations to detect and flag the following defects, any of which should have halted the closing:

## A. The Forged Notary Stamp with Invalid Notary ID

237. Stewart Title Company failed to detect or flag the forged notary stamp bearing invalid Colorado notary ID 2015400003. A competent title company performing standard closing procedures would have: (a) examined the notary stamp on the Deed of Trust; (b) conducted basic notary verification by checking the Colorado Secretary of State website (a procedure standard in the title industry); (c) discovered that notary ID 2015400003 does not exist in the Colorado notary database; (d) compared the stamp ID against the SOS database and discovered the mismatch; (e) identified that Debra Baker's authentic notary ID is 20154002003 (not 2015400003); and (f) immediately halted the closing and refused to disburse funds pending resolution of the notary stamp defect.

238. By failing to conduct even basic notary verification that would have been apparent to any competent title company, Stewart Title Company enabled the entire fraudulent securitization scheme. The forged notary stamp is the foundation upon which the entire fraud rests—without detection of this obvious defect, the fraudulent deed could be recorded and used to securitize Plaintiffs'

property.

## B. The Defective Notary Acknowledgment Violating Colorado Notary Law

239. Stewart Title Company failed to detect or flag the defective notary acknowledgment on page 11 of the Deed of Trust that violates C.R.S. § 24-21-515. The notary page: (a) fails to identify the document title; (b) fails to state the total number of pages; (c) fails to include the names of the parties; and (d) is placed on a separate page from the signature page without secure attachment evidence or cross-referencing language.

240. A competent title company would have immediately recognized that this notary acknowledgment violates mandatory Colorado notary security protocols. Any professional in the title industry should know the requirements of C.R.S. § 24-21-515, which are taught in Colorado notary training courses and are standard in the title industry. The defective notary acknowledgment should have been a red flag that halted the closing.

241. By failing to detect the defective notary acknowledgment that violates Colorado law, Stewart Title Company failed in a core professional duty. The defective notarization is such an obvious defect that failure to identify it constitutes either gross negligence or knowing complicity in the fraud.

## C. The Loan Number Discrepancies

242. Stewart Title Company failed to detect or flag the loan number discrepancies in the closing documents. At closing, Stewart Title Company should have compared: (a) the loan number on the Deed of Trust (256900R27); (b) the loan number on the promissory note; (c) the loan number on the loan estimate or truth in lending disclosure; (d) the loan number on the closing disclosure; and (e) any other loan identification documents prepared during closing.

243. If Stewart Title Company had conducted this standard comparison, the company would have been in a position to detect loan number inconsistencies

that would later manifest when MSF Servicing reported a different loan number (0820897205) than the Deed of Trust (256900R27). While Stewart Title Company may not have had access to the MSF Servicing loan number at the June 4, 2021 closing, a competent escrow agent would have ensured that all loan numbers on all closing documents matched consistently.

244. The failure to detect loan number discrepancies at closing constitutes professional negligence. Loan number consistency is a basic requirement of escrow procedure and document review.

## D. Failure to Detect Falsified Party Names (at later filings)

245. While Stewart Title Company's primary duty relates to the June 4, 2021 closing, the company's negligence was compounded by the fact that subsequent court filings and recorded instruments bore falsified party names ("STEFFANY HAMMER" instead of "STEFFANY HAMNER"). Though Stewart Title Company was not responsible for these subsequent filings, if the company had properly documented and safeguarded the closing documents showing correct names (THOMAS HAMNER AND STEFFANY HAMNER), this documentation could have served as evidence of the later falsification.

## Stewart Title Company's Negligence Enabled the Entire Fraud Scheme

246. Stewart Title Company's failure to detect the three critical defects—the forged notary stamp with invalid ID, the defective notary acknowledgment violating Colorado law, and the loan number discrepancies—directly enabled the entire securitization and foreclosure scheme. By certifying that the transaction was complete and legitimate, Stewart Title Company provided the appearance of authenticity to fraudulent documents.

247. Without Stewart Title Company's professional seal of approval on the closing, the fraudulent Deed of Trust would have been suspect and subject to challenge. The fact that a professional title company participated in the closing and did not

flag the defects gave the fraudulent deed an aura of legitimacy that enabled its subsequent recording, securitization, and use as the basis for foreclosure.

248. Stewart Title Company's negligence was not a minor omission. The defects that should have been detected are so obvious that any competent title company would have caught them. The forged notary stamp with a non-existent ID number, the defective notary acknowledgment, and the loan number discrepancies are not subtle or technical defects—they are glaring red flags.

249. Stewart Title Company's breach of professional duty directly caused injury to Plaintiffs by: (a) enabling the fraudulent securitization of Plaintiffs' property; (b) allowing the fraudulent Deed of Trust to be recorded; (c) permitting the use of the fraudulently notarized deed as security for the fraudulent loan; (d) enabling FREDDIE MAC and other investors to purchase securities based on defective documents; and (e) enabling the unlawful foreclosure based on the fraudulent deed.

250. Stewart Title Company either: (a) was negligent in failing to perform standard escrow and closing procedures; (b) deliberately overlooked obvious red flags in documents; (c) was instructed by other Defendants (Mortgage Solutions) to close regardless of defects; or (d) was complicit in the fraud by allowing the fraudulent transaction to close and be recorded while knowing of the defects.

## Damages for Breach of Professional Duty

251. Plaintiffs are entitled to recover damages from Stewart Title Company for breach of professional escrow duties and negligence, including:

a. Compensatory damages for breach of professional duty: $5,000,000.00

b. Compensatory damages for failure to detect defects that a competent title company should have caught: $3,000,000.00

c. Compensatory damages for facilitating the securitization fraud through professional

negligence: $10,000,000.00

d. Punitive damages for gross negligence or knowing complicity: $15,000,000.00 (as set forth in Count I damages allocation)

e. Recovery from Stewart Title Company's Errors & Omissions (E&O) insurance

f. Attorney's fees and costs

g. Such other relief as this Court deems just and proper

**Viability of Claims Against Stewart Title Company**

252. Stewart Title Company, as a professional escrow agent and title company, cannot escape liability by claiming that it did not know the documents were forged or defective. A professional title company has a duty to know and a responsibility to detect obvious document defects. The forged notary stamp with invalid ID 2015400003, the defective notary acknowledgment lacking cross-referencing information, and the loan number discrepancies are so obvious that negligence is presumed if not detected.

253. Plaintiffs are entitled to: (a) a declaratory judgment that Stewart Title Company breached its professional duty as escrow agent and closing agent; (b) a declaratory judgment that Stewart Title Company's negligence directly enabled the securitization and foreclosure fraud; (c) damages for breach of professional duty in the amount of $18,000,000.00; (d) punitive damages for gross negligence; (e) recovery from Stewart Title Company's E&O insurance policy; (f) attorney's fees and costs; and (g) such other relief as this Court deems just and proper.

## COUNT XII: NEGLIGENT ESCROW SERVICES AND BREACH OF ESCROW AGENT DUTIES – STEWART TITLE COMPANY

254. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

255. In addition to the breach of professional duty claims set forth in COUNT XI,

Stewart Title Company bears separate and distinct liability for negligent escrow services and breach of escrow agent duties under Colorado law and common law principles of agency and bailment.

256. An escrow agent occupies a special fiduciary position in real estate transactions. The escrow agent receives funds and documents from multiple parties, holds them in trust, and releases them only when specified conditions are met. This fiduciary relationship creates heightened duties of care, loyalty, and diligence.

257. Colorado law recognizes that escrow agents have specific duties including: (a) to hold funds and documents safely and securely; (b) to not commingle funds or documents; (c) to follow explicit instructions from all parties regarding conditions for release; (d) to verify that all closing conditions are satisfied before releasing funds; (e) to ensure that all parties understand the terms and conditions of the transaction; (f) to maintain confidentiality of sensitive information; (g) to conduct closing in a manner that protects all parties' interests; and (h) to exercise reasonable care in handling documents and funds.

258. Stewart Title Company's escrow services in Plaintiffs' closing on June 4, 2021 included holding Plaintiffs' loan documents, preparing closing disclosure documents, conducting the closing meeting, and coordinating the recording and funding of the transaction.

259. By accepting the role of escrow agent, Stewart Title Company assumed fiduciary duties that are distinct from and more stringent than ordinary professional duties. An escrow agent is held to a higher standard of care than a mere service provider. The escrow agent is a neutral party holding the interests of all parties in trust.

**Breach of Fiduciary Duty in Escrow Capacity**

260. Stewart Title Company breached its fiduciary escrow duties by:

a. **Failing to Verify Document Authenticity:** As an escrow agent holding critical

documents (Deed of Trust, promissory note, closing disclosures), Stewart Title Company had a fiduciary duty to verify the authenticity of all documents before releasing funds and permitting recording. The company failed to verify that the notary stamp was authentic and that the notary ID was valid.

b. **Failing to Protect Against Fraud:** An escrow agent has a fiduciary duty to protect against fraud in the closing process. By failing to detect the forged notary stamp and defective notary acknowledgment, Stewart Title Company breached this duty. The company should have suspected fraud when basic notary verification revealed that the notary ID did not exist.

c. **Releasing Funds Despite Red Flags:** Stewart Title Company released closing funds to Plaintiffs and permitted recording of the Deed of Trust despite obvious red flags (forged notary stamp, defective notarization, loan number discrepancies). A fiduciary escrow agent would have withheld funds and/or recording pending resolution of these defects.

d. **Failure to Disclose Known Defects:** If Stewart Title Company detected any of the document defects but proceeded with closing anyway, the company had a fiduciary duty to disclose these defects to Plaintiffs. There is no evidence that Plaintiffs were informed of any defects. This silence and concealment breaches fiduciary duty.

e. **Failure to Conduct Adequate Due Diligence:** As an escrow agent holding Plaintiffs' transaction in trust, Stewart Title Company had a duty to conduct adequate due diligence regarding all documents. The company failed to conduct notary verification, failed to check for loan number consistency, and failed to identify defects in the notary acknowledgment.

f. **Commingling or Inadequate Segregation:** While not explicitly alleged, an escrow agent's failure to properly segregate and protect loan documents from other transactions could constitute a breach of fiduciary duty. There is no evidence that Stewart Title Company maintained secure systems to protect the integrity of Plaintiffs'

closing documents.

## Negligence in Escrow Services

261. In addition to fiduciary duty breaches, Stewart Title Company's conduct constitutes ordinary negligence in the provision of escrow services. A competent escrow agent providing escrow services would:

a. Conduct a competent examination of all documents before closing;

b. Verify notary credentials and notary stamps against official databases;

c. Identify obvious document defects or red flags;

d. Refuse to close if documents are defective or fraudulently notarized;

e. Communicate defects to all parties;

f. Maintain secure and organized systems for handling closing documents;

g. Follow standard closing procedures and checklists;

h. Conduct a final review of all documents before recording; and

i. Maintain errors and omissions insurance to protect against negligent performance.

262. Stewart Title Company failed in these basic functions. The company's failure to conduct even minimal notary verification (which would have taken minutes to discover that ID 2015400003 does not exist) constitutes negligence per se—a violation of basic industry standards.

## Duty of Neutral Escrow Agent

263. As a neutral escrow agent, Stewart Title Company had a duty to be impartial and to protect the interests of all parties, including the lender (Mortgage Solutions), the investor (FREDDIE MAC), and the borrowers (Plaintiffs). By failing

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

to detect fraudulent documents, the escrow agent breached its duty to all parties.

264. A neutral escrow agent cannot favor one party over another. If Stewart Title Company had discovered the forged notary stamp and defective notarization, the agent was duty-bound to report these defects to all parties and refuse to close—not to secretly proceed with closing and allow one party (the lender or investor) to benefit from fraudulent documents at the expense of another party (the borrowers).

## Causation and Injury

265. Stewart Title Company's negligent escrow services directly caused injury to Plaintiffs by: (a) enabling the recording of a fraudulently notarized deed; (b) permitting the use of defective documents as the basis for securitization; (c) allowing the fraudulent loan to proceed without detection of obvious defects; (d) enabling FREDDIE MAC and other investors to purchase securities based on defective documents without knowledge of the defects; and (e) enabling the subsequent unlawful foreclosure based on the fraudulent deed.

266. Plaintiffs relied on Stewart Title Company's professional escrow services. Plaintiffs were entitled to rely on the company's expertise, diligence, and fiduciary duty to ensure that the closing was conducted properly and that all documents were authentic and valid. This reliance was reasonable and justified.

267. But for Stewart Title Company's negligent escrow services and breach of fiduciary duty, the fraudulent securitization and foreclosure would not have occurred. The defects in the documents were so obvious (forged notary stamp with invalid ID, defective notary acknowledgment) that competent escrow services would have detected and prevented the fraud.

## Scope of Escrow Agent Liability

268. Stewart Title Company cannot escape liability by claiming that it did not know the notary stamp was forged. An escrow agent's duty to verify document

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

authenticity includes affirmative verification of notary credentials. The company cannot claim ignorance when basic verification procedures are standard in the industry.

269. Stewart Title Company's E&O insurance is intended to cover precisely this type of negligent escrow service. The insurance policy should cover Stewart Title Company's liability for failing to detect forged documents and defective notarizations during the escrow process.

270. Plaintiffs are entitled to recover damages from Stewart Title Company for negligent escrow services, including:

a. Compensatory damages for breach of escrow agent fiduciary duty: $5,000,000.00

b. Compensatory damages for negligent escrow services and failure to detect defects: $3,000,000.00

c. Compensatory damages for enabling the securitization fraud through negligent escrow services: $10,000,000.00

d. Punitive damages for gross negligence or reckless disregard of fiduciary duty: $15,000,000.00 (as allocated in Option A damages)

e. Recovery from Stewart Title Company's Errors & Omissions (E&O) insurance policy

f. Attorney's fees and costs

g. Such other relief as this Court deems just and proper

**Total Stewart Title Company Liability**

271. Stewart Title Company's total liability across COUNT XI (Breach of Professional Duty) and COUNT XII (Negligent Escrow Services) is $18,000,000.00. This amount represents compensatory damages for the company's failures in both its professional capacity as a closing agent and its fiduciary capacity as an escrow

agent.

272. This amount does not include punitive damages, which are addressed in COUNT I (RICO), where treble damages and punitive damages are calculated across all Defendants. Stewart Title Company's share of RICO treble damages is allocated in the Prayer for Relief.

**Relief Sought Against Stewart Title Company**

273. Plaintiffs are entitled to: (a) a declaratory judgment that Stewart Title Company breached its fiduciary escrow duties; (b) a declaratory judgment that Stewart Title Company's negligent escrow services enabled the securitization and foreclosure fraud; (c) damages for breach of escrow agent fiduciary duty and negligent escrow services in the amount of $18,000,000.00; (d) punitive damages for gross negligence or reckless disregard of fiduciary duty; (e) recovery from Stewart Title Company's Errors & Omissions insurance policy; (f) an order requiring Stewart Title Company to preserve all documents and records related to Plaintiffs' June 4, 2021 closing; (g) an order requiring Stewart Title Company to produce all escrow records, closing checklists, and document examination procedures used in Plaintiffs' closing; (h) attorney's fees and costs; and (i) such other relief as this Court deems just and proper.

## COUNT XIII: LOAN COMMINGLING AND FRAUDULENT SECURITIZATION

274. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

275. Defendants engaged in systematic loan commingling and fraudulent securitization by deliberately mixing unrelated loans into securitized trusts, falsifying loan documentation, and obscuring the true identity and composition of loans held within mortgage-backed securities and Judicial Revenue Bonds.

276. Evidence of this systematic commingling appears in MSF Servicing's Qualified Written Request (QWR) response to Plaintiffs dated December 1, 2025. When Plaintiffs requested verification of their loan account information (loan number 256900R27 for property at 10442 Beckham Street, Peyton, Colorado [80831]),

MSF Servicing's response included complete loan documentation for a completely different property: 10842 Witcher Drive, Colorado Springs, Colorado 80925, with a different loan number (261670R27) and different borrowers (Jose L Velez Gonzalez and Aileen Marie Correa Roig).

277. This commingling of unrelated loans in a single QWR response demonstrates that MSF Servicing deliberately manipulated and mixed loan files to obscure true loan identity, borrower identification, and collateral composition. By including documentation for an entirely different property and different borrowers in response to Plaintiffs' request for account verification, MSF Servicing proved systematic fraud in loan file management and securitization practices.

278. Loan commingling violates federal REMIC trust requirements (Real Estate Mortgage Investment Conduit rules under 26 U.S.C. § 860), which mandate that loans securitized within a trust must be properly identified, segregated, and accurately represented to investors. Commingling loans from different properties with different borrowers into a single securitized trust constitutes fraud against investors who rely upon accurate loan pool composition.

279. The commingling of Plaintiffs' loan (256900R27, 10442 Beckham Street) with unrelated loans (261670R27, 10842 Witcher Drive) indicates that: (a) Plaintiffs' loan was never properly segregated or identified within securitized trusts; (b) Plaintiffs' loan collateral was commingled with other collateral, obscuring Plaintiffs' security interest; (c) the securitized trust documents misrepresented the composition of underlying loans and collateral; (d) investors were defrauded regarding the true nature and quality of loans held in the securities; and (e) Defendants deliberately obscured loan identity to enable simultaneous securitization and collection efforts.

280. This loan commingling constitutes: (a) wire fraud through transmission of fraudulent QWR responses containing commingled loan documentation; (b) mail fraud through delivery of fraudulent loan statements and account information; (c) securities fraud by misrepresenting loan pool composition to investors; (d)

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

violation of REMIC trust requirements; (e) tax fraud through misreporting of loan income and securitization proceeds; and (f) RICO violations through systematic fraud affecting multiple loans and investors.

281. The commingling of loans demonstrates that MSF Servicing, FREDDIE MAC, U.S. Bank, and all Defendants who participated in securitization deliberately obscured Plaintiffs' loan identity and collateral to facilitate fraudulent securitization and prevent Plaintiffs from verifying the true status and treatment of their loan within securitized trusts.

282. Plaintiffs are entitled to: (a) a declaratory judgment that Plaintiffs' loan was fraudulently commingled in securitized trusts; (b) a declaratory judgment that securitized instruments based upon commingled loans are void and unenforceable; (c) damages for securities fraud through loan commingling; (d) disgorgement of all securitization proceeds derived from fraudulently commingled loans; (e) punitive damages for knowing and willful loan commingling and fraud; (f) restitution of all amounts collected through fraudulent securitization of commingled loans; (g) criminal referral to the SEC for investigation of REMIC trust violations; (h) attorney's fees and costs; and (i) such other relief as this Court deems just and proper. *(SEE EXHIBIT 17 - QWR Response with VA Assumption Policy Rider for 10842 Witcher Drive Property showing commingling of unrelated loan in Plaintiffs' account response)*

# PRAYER FOR RELIEF (REVISED WITH COUNT XIII)

**Total Damages Claim: $1,550,000,000.00**

**A. Against Janeway Law Firm, P.C., Lynn M. Janeway, David R. Doughty, and Alison L. Berry:**

10. Damages for RICO violations (18 U.S.C. § 1964(c)): $150,000,000.00
11. Damages for securities fraud, conspiracy, wire fraud, and mail fraud: $50,000,000.00

12. Damages for identity theft through falsified party names in court filings: $15,000,000.00

13. Damages for FDCPA violations (debt collector misconduct and sale of first mortgage): $20,000,000.00

14. Damages for participation in loan commingling and fraudulent securitization scheme: $10,000,000.00

15. Punitive damages for knowing and willful fraud in foreclosure proceedings: $30,000,000.00

16. Restitution of all amounts collected or attempted to be collected through fraudulent foreclosure and eviction proceedings.

**SUBTOTAL – Janeway Law Firm and Individual Defendants: $275,000,000.00**

**B. Against Mortgage Solutions of Colorado, LLC and MSF Servicing (Wyoming entity):**

17. Damages for RICO violations and securities fraud: $200,000,000.00

18. Damages for loan number manipulation and document falsification (three different loan numbers): $30,000,000.00

19. Damages for loan commingling (mixing unrelated loans into single QWR response and securitized trusts): $40,000,000.00

20. Damages for FDCPA violations (sale of first mortgage to debt collector Janeway): $25,000,000.00

21. Damages for RESPA violations (false QWR response with incorrect loan number and commingled documentation): $15,000,000.00

22. Damages for TILA violations (loan number discrepancies and inaccurate disclosures): $15,000,000.00

23. Damages for tax fraud (false IRS Form 1098 reporting with incorrect loan number): $10,000,000.00

24. Damages for REMIC trust violations through systematic loan commingling: $20,000,000.00

25. Punitive damages for knowing and willful regulatory violations, loan commingling, and fraud: $50,000,000.00

26. Restitution of all fraudulent securitization proceeds, servicer fees, and collected amounts.

**SUBTOTAL – Mortgage Solutions and MSF Servicing: $405,000,000.00**

## C. Against FREDDIE MAC:

27. Damages for securities fraud in purchasing and securitizing fraudulently notarized instruments: $250,000,000.00

28. Damages for purchase and securitization of commingled loans with fraudulent documentation: $50,000,000.00

29. Disgorgement of all Judicial Revenue Bond proceeds and annual investment income derived from fraudulent securitization: $150,000,000.00

30. Damages for breach of fiduciary duty as purchaser and investor in fraudulent mortgage-backed securities: $50,000,000.00

31. Damages for REMIC trust violations and misrepresentation of loan pool composition to investors: $30,000,000.00

32. Punitive damages for knowing and willful securitization of forged and defective instruments and commingled loans: $75,000,000.00

**SUBTOTAL – FREDDIE MAC: $605,000,000.00**

## D. Against U.S. Bank National Association:

33. Damages for breach of Indenture Trustee fiduciary duty in accepting fraudulent securities: $40,000,000.00

34. Damages for failure to verify authenticity and validity of underlying loan documents: $25,000,000.00

35. Damages for acceptance and holding of commingled loans in securitized trust: $15,000,000.00

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

36. Damages for REMIC trust violations through failure to segregate and verify loans: $10,000,000.00

37. Punitive damages for breach of trust and dereliction of trustee responsibilities: $15,000,000.00

**SUBTOTAL – U.S. Bank National Association: $105,000,000.00**

**E. Against Stewart Title Company:**

38. Damages for breach of professional escrow and closing agent duties: $5,000,000.00

39. Damages for negligent failure to detect forged notary stamp bearing invalid Colorado notary ID 2015400003: $3,000,000.00

40. Damages for negligent failure to detect defective notary acknowledgment violating C.R.S. § 24-21-515: $3,000,000.00

41. Damages for negligent failure to detect loan number discrepancies: $2,000,000.00

42. Damages for facilitating fraudulent securitization through professional negligence and breach of escrow agent fiduciary duty: $5,000,000.00

43. Recovery from Stewart Title Company's Errors & Omissions (E&O) insurance policy for professional negligence claims: $18,000,000.00

**SUBTOTAL – Stewart Title Company: $18,000,000.00**

**F. Against Debra Baker (Notary Public):**

44. Damages for notary fraud and forgery (forged or fraudulently altered notary stamp with invalid ID 2015400003): $2,000,000.00

45. Damages for violation of Colorado Notary Law (C.R.S. § 24-21-515) through defective notary acknowledgment: $1,500,000.00

46. Damages for breach of notary public duty and professional responsibility: $500,000.00

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

**SUBTOTAL – Debra Baker: $4,000,000.00**

**G. Against Steve Schleiker (El Paso County Clerk and Recorder):**

47. Damages for violation of Colorado Recording Act (C.R.S. § 30-10-406) ministerial duty to record: $5,000,000.00

48. Damages for violation of federal maritime law supremacy (46 U.S.C. § 30908, § 30912) through unlawful denial of recording services: $10,000,000.00

49. Damages for arbitrary and capricious refusal to record identical documents (estoppel by prior acceptance doctrine): $5,000,000.00

50. Damages for official misconduct and abuse of administrative process (C.R.S. § 18-8-404): $5,000,000.00

51. Damages for conflict of interest motivated obstruction (named defendant refusing to perfect superior liens): $5,000,000.00

**SUBTOTAL – Steve Schleiker: $30,000,000.00**

**H. Against Kelly June McPherson (District Court Judge):**

52. Damages for judicial misconduct and abuse of judicial power: $15,000,000.00

53. Damages for violation of due process rights through authorization of foreclosure sale while named defendant in related litigation: $10,000,000.00

54. Damages for breach of judicial fiduciary duty and conflict of interest: $5,000,000.00

55. Punitive damages for knowing and willful abuse of judicial authority: $10,000,000.00

**SUBTOTAL – Kelly June McPherson: $40,000,000.00**

**I. Against Charles (Chuck) Broerman (El Paso County Treasurer and Public Trustee):**

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

56. Damages for official misconduct in recording and executing fraudulent Certificate of Purchase: $8,000,000.00

57. Damages for violation of fiduciary duty as Public Trustee: $5,000,000.00

58. Damages for knowingly executing foreclosure sale based on fraudulently notarized deed: $7,000,000.00

**SUBTOTAL – Charles Broerman: $20,000,000.00**

**J. Against Sheri King (Clerk of Combined Courts, El Paso County):**

59. Damages for falsification of court records (certifying documents with known inconsistencies): $5,000,000.00

60. Damages for official misconduct in facilitating fraudulent court filings: $3,000,000.00

61. Damages for breach of duty as clerk to maintain accurate records: $2,000,000.00

**SUBTOTAL – Sheri King: $10,000,000.00**

**K. Against Kenny Hodges (El Paso County Attorney):**

62. Damages for official misconduct in suppressing Plaintiffs' lawful petitions for redress: $3,000,000.00

63. Damages for failure to investigate Notice of Bond Claim and systematic fraud evidence: $2,000,000.00

**SUBTOTAL – Kenny Hodges: $5,000,000.00**

**L. Against El Paso County Board of Commissioners (Bill Wysong, Holly Williams, Carrie Geitner, Lauren Nelson, Cory Applegate):**

64. Damages for official misconduct in failing to investigate and respond to fraud complaints: $5,000,000.00

65. Damages for institutional failure to protect Plaintiffs' property rights and

constitutional protections: $3,000,000.00

**SUBTOTAL – El Paso County Board: $8,000,000.00**

## M. Against Jeffrey Trusheim (CFO/Debt Assignment Recipient):

66. Damages for breach of fiduciary duty in ignoring UCC-3 Assignment File # 20252119773: $2,000,000.00
67. Damages for failure to acknowledge superior secured party status and priority lien perfection: $1,000,000.00

**SUBTOTAL – Jeffrey Trusheim: $3,000,000.00**

## N. Against MERSCORP Holdings LLC (MERS):

68. Damages for maintaining inaccurate records while allowing fraudulent instruments to be recorded: $5,000,000.00
69. Damages for failure to flag or report loan number discrepancies and fraudulent notarization: $3,000,000.00

**SUBTOTAL – MERSCORP Holdings: $8,000,000.00**

## O. Against El Paso County (Institutional Liability):

70. Damages for institutional failure to prevent systematic fraud involving county officials: $15,000,000.00
71. Damages for recording and maintaining fraudulent instruments in official county records: $10,000,000.00

**SUBTOTAL – El Paso County: $25,000,000.00**

## IV. AGGREGATE CALCULATIONS

Janeway                        Defendants:                        $275,000,000.00

        MSC/MSF                        Defendants:                        $405,000,000.00

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

| | | | |
|---|---|---|---|
| FREDDIE | MAC: | | $605,000,000.00 |
| U.S. | Bank: | | $105,000,000.00 |
| Stewart | Title | Company: | $18,000,000.00 |
| Debra | Baker: | | $4,000,000.00 |
| Steve | Schleiker: | | $30,000,000.00 |
| Kelly | June | McPherson: | $40,000,000.00 |
| Charles | Broerman: | | $20,000,000.00 |
| Sheri | King: | | $10,000,000.00 |
| Kenny | Hodges: | | $5,000,000.00 |
| El | Paso | County | Board: | $8,000,000.00 |
| Jeffrey | Trusheim: | | $3,000,000.00 |
| MERSCORP | Holdings: | | $8,000,000.00 |

El Paso County (Institutional): $25,000,000.00

## TOTAL MONETARY DAMAGES: $1,561,000,000.00

## V. ADDITIONAL MONETARY RELIEF

72. Pre-judgment interest at the maximum legal rate from July 27, 2026 (date of fraudulent foreclosure authorization) until date of judgment.

73. Post-judgment interest at the maximum legal rate from date of judgment until payment in full.

74. Reasonable attorney's fees, expert witness costs, investigation costs, and litigation expenses.

75. Recovery from all Defendants' insurance policies (Errors & Omissions, General Liability, Professional Liability, Fidelity Bonds) to satisfy judgments.

76. Restitution of all amounts collected through fraudulent foreclosure sale, eviction proceedings, or any collection efforts based on the fraudulently notarized Deed of Trust or manipulated loan documents.

## VI. PRESERVATION OF RIGHTS

77. Plaintiffs expressly preserve and reserve all rights to compel discovery from all Defendants at any time throughout these proceedings, without limitation or waiver. Plaintiffs reserve the right to: (a) conduct extensive document discovery from all Defendants regarding all communications, records, policies, procedures, training materials, and decisions related to the securitization scheme, fraudulent notarization, loan manipulation, foreclosure authorization, and eviction proceedings; (b) conduct deposition discovery of all Defendants, their agents, representatives, employees, and decision-makers; (c) conduct interrogatory discovery regarding each Defendant's knowledge, participation, and intent; (d) conduct requests for production of all documents, electronic records, emails, text messages, and communications; (e) conduct requests for admission regarding material facts; (f) issue subpoenas to third parties (including investors, securitization trustees, federal agencies, Colorado Secretary of State, Colorado Attorney General, IRS, SEC) for documents and testimony; (g) conduct expert discovery regarding industry standards, notary law, securities fraud, loan servicing practices, and damages; (h) conduct supplemental discovery as new information is discovered; and (i) compel responses to all discovery requests and seek sanctions for non-compliance, destruction of evidence, and spoliation of documents.

78. Plaintiffs' discovery rights are not limited by the statute of limitations, the pleading deadlines, the discovery cutoff date, or any other procedural rule that might otherwise restrict discovery. Plaintiffs reserve the absolute right to pursue discovery against all Defendants to the maximum extent permitted by the Federal Rules of Civil Procedure, including discovery of: (a) all documents created, received, or reviewed by any Defendant related to Plaintiffs' loan, property, foreclosure, or securitization; (b) all communications between Defendants regarding Plaintiffs' loan or property; (c) all training materials and policies used by Defendants; (d) all similar transactions involving forged notary stamps, loan number discrepancies, loan commingling, or fraudulent securitization; and (e) all

financial records, insurance policies, and assets available to satisfy judgments.

79. Any violation of Plaintiffs' discovery rights, including destruction of evidence, spoliation of documents, failure to preserve electronic records, or refusal to respond to discovery requests, shall subject the offending Defendant to sanctions including monetary sanctions, default judgment, striking of pleadings, adverse inferences regarding destroyed evidence, and other relief as this Court deems appropriate.

## VII. CRIMINAL REFERRALS

80. Criminal referral to the Colorado Attorney General for investigation and prosecution of: (a) notary fraud and forgery (C.R.S. § 18-3-206); (b) violations of Colorado Notary Law (C.R.S. § 24-21-515); (c) aggravated identity theft (C.R.S. § 18-5-903); (d) official misconduct by county officials (C.R.S. § 18-8-404); and (e) securities fraud.

81. Criminal referral to the Colorado Secretary of State for investigation of misuse of notary credentials and fraudulent notary stamps.

82. Criminal referral to the Federal Bureau of Investigation (FBI) for investigation of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), securities fraud (18 U.S.C. § 1348), money laundering (18 U.S.C. § 1956), RICO violations (18 U.S.C. § 1962), and conspiracy (18 U.S.C. § 371).

83. Criminal referral to the Internal Revenue Service (IRS) for investigation of tax fraud and false Form 1098 reporting.

84. Criminal referral to the Securities and Exchange Commission (SEC) for investigation of securities fraud in the issuance, purchase, and securitization of fraudulent Judicial Revenue Bonds and mortgage-backed securities, REMIC trust violations, and misrepresentation of loan pool composition to investors.

## VIII. MISCELLANEOUS RELIEF

85. An Order requiring all Defendants to preserve all documents, emails,

MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

communications, records, and electronic data related to Plaintiffs' loan, property, foreclosure, and securitization.

86. An Order requiring Defendants to produce all document retention and destruction policies and all evidence of compliance or non-compliance with document preservation obligations.

87. An Order requiring Defendants to conduct a forensic examination of all electronic devices and systems to recover any deleted, destroyed, or concealed communications.

88. Such other and further relief as this Court deems just, proper, and equitable under the circumstances of this case.

## IX. OFFER OF PRIVATE SETTLEMENT THROUGH FINRA MEDIATION

Plaintiffs STEFFANY ROSE HAMNER©™ and THOMAS PATRICK HAMNER hereby express their willingness to engage in good-faith settlement negotiations with any and all Defendants who wish to resolve this matter privately and expeditiously through neutral mediation administered by the Financial Industry Regulatory Authority (FINRA).

Plaintiffs recognize that protracted litigation is costly, time-consuming, and disruptive to all parties. Accordingly, Plaintiffs invite any Defendant or group of Defendants to initiate private settlement discussions at any time during the pendency of this action.

Any Defendant or Defendants' representative wishing to commence settlement negotiations with Plaintiffs shall do so in writing via email to: **live2seetheday@yahoo.com**, with a copy to Plaintiffs' co-counsel.

All settlement communications shall be treated as settlement offers protected from disclosure under Federal Rule of Evidence 408 and shall not be used as admissions against any party.

Plaintiffs reserve all rights to pursue this action with full force and vigor against any party that does not engage in good-faith settlement discussions or that rejects

reasonable settlement proposals. Furthermore, any party that initiates settlement discussions with Plaintiffs and thereafter fails to adhere to the terms, conditions, or requests established during settlement negotiations shall remain subject to all injunctive relief, equitable remedies, and monetary damages sought herein. Plaintiffs will not permit any Defendant to use settlement discussions as a delay tactic or subterfuge to avoid compliance with the Temporary Restraining Order, injunctive relief, or other court orders. Any such bad-faith conduct shall result in enhanced damages, sanctions, and attorney's fees.

**TOTAL RELIEF REQUESTED: $1,561,000,000.00 in monetary damages, equitable relief, injunctive relief, and all additional relief as set forth herein.**

All rights reserved without prejudice. UCC 1-308 / UCC 1-103 / Non-Assumpsit

Respectfully submitted:

by: steffany-rose: oakland©™, EX

steffany-rose: oakland©™
Attorney-in-Fact and Authorized Representative
For STEFFANY ROSE HAMNER©™ and THOMAS PATRICK HAMNER
General Executor for STEFFANY ROSE HAMNER ESTATE©™
Operating under Divine Protection and Authority of:
MAKARIOS LIVING TEMPLE TRUST™
O'KAH-LANN TRIBE™
Operating under Divine Protection of Source Creator,
Natural Law, and the Galactic Accords

Dated this 7th day of August in THE YEAR OF OUR LORD Two Thousand and Twenty-Six

Sealed with:
✧ The frequency of 528Hz (Love/Miracles/DNA Repair)
✧ The violet flame of transmutation
✧ The emerald ray of healing and abundance
✧ The golden Christos-Sophia consciousness

Witnessed in the Akashic Records across all timelines

   



MAKARIOS LIVING TEMPLE TRUST™/ O'KAH-LANN TRIBE™
Document Number: MLT-2026-0807-COLO-COMPLAINTArticle III Court of Record, Case No. AIIICR-2026-SRO-002-SEC

# AFFIDAVIT OF DELIVERY

I, auron-caelum: stark, declare under divine law, natural law, and full commercial liability (UCC 1-308, UCC 1-103, Non-Assumpsit) that I am Co-counsel of record for Plaintiffs STEFFANY ROSE HAMNER©™ and THOMAS PATRICK HAMNER in the above-captioned case.

Pursuant to Federal Rule of Civil Procedure 5(a) and the Local Rules of Practice for the United States District Court for the District of Colorado, I hereby affirm that on this _____ day of _____, 2026, I caused to be delivered to the United States Marshals Service for service upon all defendant(s) or counsel for defendant(s) in this action at no cost to Plaintiffs (in forma pauperis filing) true and correct copies of the following documents:

1. Complaint for Violations of Federal RICO Act, Securities Fraud, Conspiracy to Commit Offenses Against the United States, Conspiracy Against Civil Rights, and Request for Declaratory Judgment, Injunctive and Other Equitable Relief (13 Counts)

The United States Marshals Service will effectuate service upon all named Defendants as follows:

I declare under divine law, natural law, and full commercial liability that the foregoing is true and accurate. I personally delivered these documents to the United States Marshals Service, which is authorized to effectuate service upon all Defendants at no cost to Plaintiffs due to the Court's approval of Plaintiffs' in forma pauperis filing status.

Executed this _____ day of _____, 2026.

_____

auron-caelum: stark
Co-Counsel of Record
For STEFFANY ROSE HAMNER©™ and THOMAS PATRICK HAMNER